Paul WURTZ, Plaintiff-Respondent-Petitioner,

v.

L. William FLEISCHMAN, Defendant-Appellant.

Supreme Court

*No. 78–110. Argued June 3, 1980.—Decided June 27, 1980.*

(Also reported in 293 N.W.2d 155.)

For the plaintiff-respondent-petitioner there was a brief by *Godfrey, Pfeil & Neshek, S.C.*, of Elkhorn, and oral argument by *Thomas Godfrey*.

For the defendant-appellant there were briefs by *Lowell E. Sweet* and *Sweet & Leece* of Elkhorn, and oral argument by *Lowell E. Sweet*.

HEFFERNAN, J.  The sole issue on this appeal is whether the court of appeals, in reversing the trial court, exceeded its authority as an appellate court by making factual determinations in lieu of, and in addition to, the findings made by the trial court.  We conclude that the court of appeals exceeded its appellate authority; and we reverse its decision, published at 89 Wis.2d 291, 278 N.W.2d 266 (1979), and remand the cause to the trial court for further proceedings consistent with this opinion.

Paul Wurtz commenced this action on October 26, 1976, seeking damages from L. William Fleischman for his refusal to convey nine and one-half units of Lakeside Habitat Developments valued at $47,500.  Fleischman had signed a subscription agreement to transfer the units to Wurtz as an integral part of a large real estate transaction, but had subsequently refused to honor the agreement.

At trial, Wurtz alleged that Fleischman was guilty of fraud for inducing him to close the larger real estate deal by signing the subscription agreement without any intention of honoring it.  Fleischman conceded Wurtz's allegations, but defended his conduct, because Wurtz, by applying economic duress, coerced his acquiescence to the agreement.  Because the evidence adduced at trial is described in detail by the court of appeals, 89 Wis.2d at 297–300, it is summarized below only insofar as it is pertinent to our review.

Between 1971 and 1975 Wurtz was the president and sole stockholder of Hotel Luzern, Inc. Fleischman, an experienced real estate broker, was the president of Lakeside Habitat Corporation and a general partner in the limited partnership of Lakeside Habitat Developments. Lakeside Habitat Corporation was also a general partner in the limited partnership.

On December 13, 1971, Wurtz entered into a real estate listing with Fleischman, giving Fleischman the exclusive right to lease or sell certain property owned by Hotel Luzern, Inc. Fleischman failed to find any lessees or purchasers during the term of either the original listing agreement or of a similar subsequent agreement.

Fleischman eventually became interested in buying the property himself; and on September 8, 1973, Hotel Luzern, Inc. and Lakeside Habitat Corporation arranged an "Offer To Exchange Property." The exchange agreement required Wurtz to notify Fleischman what property he wanted in exchange for the hotel property valued at $300,000. Fleischman was to purchase the property selected by Wurtz and trade it for the hotel property at the closing.

The record indicates that, in order to extend the closing date, three addendums were made to the original offer to exchange property. The second and third addendums indicated that Lakeside Habitat Corporation was responsible for the delay and provided that Hotel Luzern, Inc., was entitled to a specified sum in consideration for agreeing to postpone the closing. The addendums all provided that time was of the essence in respect to the closing date. The last addendum specified March 31, 1974 as the date of closing.

Although many of the necessary arrangements were made, the closing did not take place on March 31, 1974, the date specified in the last addendum. The only explanation contained in the record for the postponement was that Fleischman was having difficulty procuring the

necessary financing. The parties did not enter into a written agreement to extend the 1974 closing date or to waive the "time is of the essence" provision.

Sometime after the March 31, 1974 closing date passed and before the actual closing date, Wurtz informed Fleischman that the offer to exchange property would be withdrawn unless Fleischman increased the value of the property he was willing to exchange by $50,000. Fleischman agreed to add the nine and one-half units of Lakeside Habitat Developments, worth $47,500, to the deal, and the closing took place on March 24, 1975. In conjunction with executing the various closing papers, Fleischman signed a subscription agreement to transfer the units to Wurtz. Fleischman testified that the only reason he signed the subscription agreement was to insure that the larger transaction would close and that he never intended to transfer the nine and one-half units.

Fleischman testified that Wurtz made the demand for additional compensation for the first time on March 23, 1975, the night before the deal was planned to close. Fleischman stated that he felt compelled to meet Wurtz's last-minute demand in order to avoid financial ruin. He detailed the large amount of time and financial resources he had expended in expectation of closing the deal and stated that most of it would have been a total loss if the deal were not closed. Fleischman further stated that, even though the "time is of the essence" clause had not been waived by Wurtz, the closing was still contemplated upon the terms of the original agreement. In support of this contention, he testified that the parties continued to negotiate after the March 31, 1974 closing date passed and that Wurtz accepted a credit at the actual closing equaling monthly rental payments earned during the postponement period from the property held by Fleischman for exchange.

Wurtz, on the other hand, disputed Fleischman's testimony and testified that the demand for the $50,000 was

made two or three months before the March 24, 1975 closing date and was repeated on several occasions. Wurtz claimed that, because time was of the essence in the deal, he had no legal obligation to close the deal once the 1974 closing date passed and was, therefore, free to modify the original agreement.

At the conclusion of the trial to the court, which consisted solely of testimony by the two parties and the introduction of several exhibits, the trial court held that Fleischman was guilty of fraud and that the defense of economic duress was without merit and awarded Wurtz judgment for the value of the nine and one-half units. The trial court made 26 specific findings of fact and four conclusions of law, all of which were drafted by Wurtz's counsel,[1] and filed a memorandum decision.

In its decision, the trial court reasoned that Fleischman was an experienced businessman whose specialty was commercial real estate and "could have drawn papers to protect himself" during the postponement if he was so dependent on the deal being closed. The court also concluded that there was no duress, because Fleischman had

---

[1] Citing *Bibelhausen v. Bibelhausen*, 159 Wis. 365, 371, 150 N.W. 516 (1915), Fleischman's attorney has placed much emphasis on the contention that findings drafted by a trial judge are entitled to more weight than those drafted by counsel and signed by the judge. *Bibelhausen, supra,* offers no support for this erroneous contention.

Counsel cannot abdicate his responsibility in the adversary process by such a post hoc rationale. He has the opportunity to be heard before such findings prepared by opposing counsel are approved. His failure to scrutinize them carefully or to insist upon procedures that insure the fact that they are truly judicial findings cannot be used as an excuse that the findings have limited or a lesser validity. We conclude that findings signed by a trial judge are of the same weight and significance whether or not they are personally prepared by him. *See also* sec. 805.17(2), Stats.

an adequate legal alternative to signing the subscription agreement—he could have refused to meet Wurtz's demand and could have brought a legal action instead of fraudulently inducing Wurtz to close the deal. The trial court specifically found that Fleischman neither made his promise to convey the units, nor signed the subscription agreement while under any duress from Wurtz.

The court of appeals reversed the trial court on the ground that, according to its view of the facts, Fleischman had established a valid defense of economic duress. The court of appeals said that, although this court has recognized the doctrine of economic or business duress as a valid defense to a contract, we have not, as yet, specifically articulated the criteria to be used in determining whether a cause of action or defense exists for economic duress. 89 Wis.2d at 300–01. To fill this perceived need, the court of appeals adopted the analytical formula proposed in a student law review note, *Economic Duress after the Demise of Free Will Theory: A Proposed Tort Analysis,* 53 Iowa L. Rev. 892 (1968), and applied it to the facts of the case. Using the tort criteria of duty, breach, causation and damages, the court of appeals considered the parties' relative bargaining positions, the availability of alternative legal remedies, the gravity of the threatened harm, the wrongfulness or illegality of the threats, and the fairness of the resulting bargain. 89 Wis.2d at 301.

The court of appeals concluded that economic duress was an intentional tort and that Fleischman therefore had the burden of proving the defense "to a reasonable degree of certainty, by evidence that [was] clear, satisfactory and convincing . . . ." 89 Wis.2d at 302. Without mentioning the trial court's findings, the court of appeals made a *de novo* analysis of the record and held that, under the criteria adopted from the law review note, Fleischman had established the defense of economic

duress "by the greater weight of the credible evidence."[2] 89 Wis.2d at 308.

Neither party to this review challenges the criteria adopted by the court of appeals for determining duress. Nor is there any contention that the various factual determinations made by the court of appeals are without at least arguable support in the record. The question on review is limited to whether the court of appeals exceeded its authority by making factual determinations, based on conflicting evidence, in lieu of, and in addition to, the findings made by the trial court. We conclude that it clearly did.[3]

The weight of the evidence and the credibility of the witnesses are matters resting within the province of the trier of fact. It is axiomatic that trial court findings may not be disturbed on appeal unless they are contrary to the great weight and clear preponderance of the evidence or are conclusions of law mislabeled as findings. *See, e.g., In Matter of Estate of Sensenbrenner,* 89 Wis. 2d 677, 278 N.W.2d 887 (1979); *In re Estate of Glass,* 85 Wis.2d 126, 270 N.W.2d 386 (1978); *see generally,* 7 *Wisconsin Pleading and Practice,* sec. 54.98 and cases cited therein.

---

[2] The court offered no explanation for why it tested Fleischman's economic duress defense under a less demanding standard of proof than it had earlier said was applicable to such defenses.

[3] The court of appeals is by the Constitution limited to appellate jurisdiction. Art. VII, sec. 5(3), Wis. Const. This precludes it from making any factual determinations where the evidence is in dispute. This is a power reserved to trial courts or to the supreme court under appropriate procedures in the exercise of its constitutional grant of original jurisdiction. The court of appeals has, of course, additional constitutional jurisdiction in respect to its supervisory authority over actions and proceedings in the trial court. This grant of jurisdiction does not confer the right to make findings of fact where the evidence is controverted.

The court of appeals advanced neither of the above reasons as a justification for overturning the trial court's finding that Fleischman was not under any duress when he agreed to the transfer. Despite Fleischman's contentions on this review to the contrary, it is clear that even if we were to somehow attribute these reasons to the court of appeals' decision they would not justify the court's handling of the appeal. First, as is evident from our review and recitation of the facts, the evidence regarding duress in this case was sharply disputed. In fact, the evidence pertaining to duress was so disputed that it could not be said as a matter of law that either the trial court's findings or the findings made *de novo* by the court of appeals are against the great weight and clear preponderance of the evidence. And, second, even though the criteria to be used in determining duress is a matter of law, the question of whether duress existed in a particular transaction is a matter of fact. 25 Am. Jur. 2d, *Duress and Undue Influence,* sec. 34 at 394–95; *see also,* 13 Williston, *Contracts,* sec. 1617 at 706 (3d ed. 1970).

The court of appeals apparently thought that it was appropriate to make its own findings, because it had adopted criteria for evaluating economic duress that it believed the trial court had not considered.

When an appellate court is confronted with inadequate findings and the evidence respecting material facts is in dispute, the only appropriate course for the court is to remand the cause to the trial court for the necessary findings. *Perrenoud v. Perrenoud,* 82 Wis.2d 36, 50, 260 N.W.2d 658 (1978); *see generally,* 7 *Wisconsin Pleading and Practice,* sec. 55.07 at 167 and cases cited therein.

The court of appeals found, among other things, that Wurtz's threat to withdraw the offer to exchange prop-

erty unless Fleischman agreed to modify the contract was "wrongful"; that the wrongful act deprived Fleischman of his unfettered will in deciding whether to sign the subscription agreement; that Fleischman agreed to the modification only because he felt impelled to save his business interests without hope of obtaining a benefit; that the modification resulted in an unfair exchange of values; and that Fleischman had no adequate alternative but to agree. Each of these findings of fact was based on conflicting evidence and, under our law and procedure, could only be made by the constitutionally authorized trier of fact. Accordingly, we reverse the decision of the court of appeals.

Because we agree with the unstated assumption underlying the court of appeals' decision that the trial court did not make all the findings necessary for appellate review, we remand the cause to the trial court for it to make the necessary findings. If the trial judge concludes, upon reviewing the record, that there is an inadequate basis for making the necessary findings, he may reopen the case and take additional testimony. He may enter a judgment on the basis of the existing record or upon the basis of additional proceedings.

Among the basic elements of economic duress which the trial court should expressly consider on remand are those listed by *Williston, supra,* sec. 1617 at 704:

"1. The party alleging economic duress must show that he has been the victim of a wrongful or unlawful act or threat, and

"2. Such act or threat must be one which deprives the victim of his unfettered will.

"As a direct result of these elements, the party threatened must be compelled to make a disproportionate exchange of values or to give up something for nothing. If the payment or exchange is made with the hope of obtaining a gain, there is not duress; it must be made solely for the purpose of protecting the victim's business

or property interests. Finally, the party threatened must have no adequate legal remedy." (Citations deleted.) *Accord,* 25 Am. Jur. 2d, *supra,* at 353–56; *Annot.—Economic Duress or Business Compulsion in Execution of Promissory Note,* 79 ALR3d 598 (1977); Hillman, *Policing Contract Modifications under the UCC: Good Faith and the Doctrine of Economic Duress,* 64 Iowa L. Rev. 849 (1979).

Williston emphasizes that merely driving a hard bargain or taking advantage of another's financial difficulty is not duress. *Williston, supra* at 708. As Judge Robert W. Warren noted recently in a decision from the Eastern District of Wisconsin holding that there was no economic duress because there was no wrongful act:

"Duress involves 'wrongful acts . . . that compel a person to manifest apparent assent to a transaction without his volition or cause such fear as to preclude him from exercising free will and judgment in entering into a transaction.' *Restatement of Contracts,* sec. 493 (1932). See *T. F. Pagel Lumber Co. v. Webster,* 231 Wis. 222, 285 N.W. 739 (1939)." *Federal Deposit Ins. Corp. v. Balistreri,* 470 F. Supp. 752, 758 (E.D. Wis. 1979).

Applying these authorities to the present case will require the trial court to consider whether Wurtz's refusal to close the deal unless Fleischman consented to modifying the agreement was wrongful. This determination will depend, in part, on whether Wurtz was under any legal obligation to close the deal after March 31, 1974 on the terms originally contemplated. *Cf., Clear View Estates, Inc. v. Veitch,* 67 Wis.2d 372, 378–79, 227 N.W. 2d 84 (1975). As *Pagel, supra,* states at 225, "Threats to do what the threatening person has a legal right to do, do not constitute duress."

Finally, it should be added that for the defendant to successfully defend on the ground of duress all the essen-

tial elements must be proved by clear and convincing evidence—the same burden that is imposed upon the plaintiff in asserting his cause of action for fraud.

*By the Court.*—Decision of the Court of Appeals reversed; and cause remanded to the trial court with directions to vacate the judgment and for further proceedings consistent with this opinion.