Ronald J. STILLWELL, Plaintiff-Appellant,

v.

Roger LINDA and Nancy Linda, Defendants-Respondents.†

Court of Appeals

*No. 82–227. Submitted on briefs October 19, 1982.—Decided December 27, 1982.*

(Also reported in 329 N.W.2d 257.)

For the plaintiff-appellant the cause was submitted on the brief of *George W. Love* of *Love & Love* of Waukesha.

For the defendants-respondents the cause was submitted on the brief of *E. Clarke Arnold* of *Callahan & Arnold* of Columbus.

Before Voss, P.J., Brown and Scott, JJ.

BROWN, J. In this appeal, we affirm a jury finding that Roger and Nancy Linda would not have signed the promissory note but for economic duress.

---

† Petition to review denied. CECI, J., took no part.

The Lindas owned the Avenue Bar in Okauchee subject to a land contract. In June 1975, they entered into an exchange of property agreement with National Exchangors, Inc., a corporation composed of several real estate brokers. The Lindas agreed to trade their tavern in return for a farm located in Dodge county.

The trade agreement called for National Exchangors to take over the tavern and assume payment of an existing land contract on the tavern property. As for the Lindas, in addition to giving up the tavern, they also signed a $65,000 land contract for the farm, at nine and one-half percent interest. Because Mr. Linda's principal occupation was as a landscaper, it was agreed that Mr. Linda would do landscaping for National Exchangors as a credit against the land contract payments on the farm until December 1975. At that point, a monthly monetary payment would begin.

The farm property was subject to a prior bank mortgage with National Exchangors as the mortgagor. The bank started foreclosure proceedings in December 1975 and served the Lindas with notice of the foreclosure.

The Lindas, who had already received credit for the three months of landscaping services and had paid December's land contract payment, stopped making further payments. They inquired of the bank whether they could assume the mortgage, which had a balance of about $57,-000, but the bank refused. The Lindas kept trying to work out some way of preventing foreclosure. Finally, a neighbor came to their aid. He offered to pay off the complete amount that National Exchangors owed on the mortgage. In return, however, he wanted a warranty deed from National Exchangors. Then, the plan was for the Lindas to enter into a land contract with the neighbor for a portion of the farm; the neighbor would keep a portion for himself.

National Exchangors balked, saying that it would go through with the plan only if the Lindas would sign a

promissory note for $15,600. The Lindas signed the note, which was made payable to an assignee, Ronald Stillwell. The mortgage was then paid, and the deed was sent to the neighbor. After eighteen months of payments to Stillwell, the Lindas quit paying on the note. Stillwell sued on the note, and the Lindas answered by alleging that the note was signed under economic duress.

Following the reception of evidence, the jury was instructed on economic duress as follows:

The word duress has been alluded to in the arguments that you have heard and there must be in contracts a full and free consent by the parties to the term of the contract. If consent of the parties is obtained through duress, that party may either void or ratify the contract.

Duress under Wisconsin law does not only include a threat of loss of life, limb or liability but also includes an act performed to present great property loss or heavy penalty when there seems to be no adequate remedy except to submit to under duress or illegal demand. However, the creditor who demands a more satisfactory evidence of a prior existing [debt] that has a legal right to do so, is not committing an act of duress thereby.

The jury found economic duress, and Stillwell appeals.

Stillwell argues that National Exchangors did nothing wrong by demanding a promissory note as a condition precedent to the deal. He reasons that, at the time the note was signed, the Lindas had been living on the farm for eight months without paying anything to National Exchangors. He reasons further that if the $65,000 land contract had been paid, National Exchangors would have realized an $8,000 profit. He concludes that the two claims, when added together, amount to an antecedent debt. Finally, he points to the maxim that there can be no economic duress unless the alleging party has been the victim of a wrongful act. He says that National Exchangors committed no wrongful act in demanding more satisfactory evidence of a prior existing debt.

It is true that actions that are not wrongful cannot result in economic duress. In *Wurtz v. Fleischman,* 97 Wis. 2d 100, 110, 293 N.W.2d 155, 160 (1980), the supreme court said that merely driving a hard bargain or taking advantage of another's financial difficulties is not duress. The *Wurtz* court then quoted, with approval, Judge Robert W. Warren's decision in *Federal Deposit Insurance Corp. v. Balistreri,* 470 F. Supp. 752, 758 (E.D. Wis. 1979), which reads:

Duress involves *"wrongful* acts . . . that compel a person to manifest apparent assent to a transaction without his volition or cause such fear as to preclude him from exercising free will and judgment in entering into a transaction." [Emphasis added.]

*Wurtz,* 97 Wis. 2d at 110, 293 N.W.2d at 160. Finally, *Wurtz* repeated the long held rule that "threats to do what the threatening person has a legal right to do, do not constitute duress." *Id.*

While an antecedent debt existed, National Exchangors did not have a legal right to collect it. It had defaulted on its part of the bargain and was in no condition to perform the contract. Had the Lindas not signed the note, it could not have successfully sued for specific performance.

We are convinced the jurors could conclude that National Exchangors compelled the Lindas to sign the agreement by resort to a wrongful act. The evidence shows that National Exchangors was in a superior economic bargaining position. This is because it was the sole source of something needed by the Lindas to avoid severe economic loss. For instance, had the Lindas, with three children in the home, not signed the promissory note, they would have been forced to leave their farmhouse. There was no other home to which they could re-

turn. In addition, the Lindas would have found it difficult to regain their tavern and, therefore, recoup their part of the original bargain. This is because their tavern license had long been given up. The Lindas also had to pay $4,000 worth of outstanding bills on the tavern inventory, even though National Exchangors had agreed to pay those bills. Had the Lindas not signed the promissory note, they would have been out an extra $4,000 without any remedy with which to protect their interest. Therefore, two severe economic deprivations would have taken place had the Lindas not signed the note. First, they would have lost their homestead. Second, there would have been no benefit of the bargain from having traded the tavern.

The jury could have inferred that National Exchangors took advantage of the Lindas' weak bargaining position as a means by which to get compensated for something they had no right to recover. The jury, the record shows, chose to believe that National Exchangors used its superior position unreasonably, such that the Lindas had no reasonable choice of alternatives.

Because there is sufficient evidence to support the inference that National Exchangors unreasonably used its superior position to compel the Lindas' signature, we affirm.

*By the Court.*—Judgment affirmed.