JPM, INC., John P. Mettler, and Margo Mettler, Plaintiffs–Appellants,

v.

JOHN DEERE INDUSTRIAL EQUIPMENT COMPANY and Deere & Company, Defendants–Appellees.

No. 95–3776.

United States Court of Appeals, Seventh Circuit.

Argued April 16, 1996.

Decided Aug. 19, 1996.

Carol S. Dittmar, argued, Garvey, Anderson, Johnson, Gabler & Geraci, Eau Claire, WI, for Plaintiffs–Appellants.

James Michal Brennan, David R. Cross, argued, Quarles & Brady, Milwaukee, WI, for Defendants–Appellees.

Gary L. Antoniewicz, Christopher J. Dodge, Tomlinson, Gilman & Rikkers, Madison, WI, for amicus curiae Midwest Equipment Dealers Ass'n, Inc.

Before ESCHBACH, MANION, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

John Mettler and his wife Margo are the sole shareholders of JPM, Inc. In 1990, JPM and the John Deere company entered into three separate agreements. The agreements, which created a dealership under the Wisconsin Fair Dealership Law, made JPM a "dealer" and John Deere a "grantor," as those terms are defined by the Wisconsin law. Wis.Stat. § 135.02(2) and (5). In the deal, JPM purchased the exclusive dealership rights to certain lines of John Deere equipment in a defined territory in northwest Wisconsin for $1 million. Four years later, JPM sold the dealership to Ison Equipment for roughly double that amount—$2,062,705—plus a three-year employment contract at $104,000 a year for John Mettler.

After the sale was completed, JPM sued John Deere for damages, alleging that Deere constructively terminated the dealership in violation of the Wisconsin Fair Dealership Law. In support of its constructive termination claim, JPM alleged, among other things, that it had been told by John Deere that it must sell the dealerships within three months, that it must sell to Ison, and that it could not merge with Ison or solicit other bids.

John Deere moved for summary judgment, essentially arguing that a cause of action does not exist under the Wisconsin Fair Dealership Law for constructive termination. Deere's argument was quite simple: JPM lacked standing to sue under the Fair Dealership Law because the dealership was not terminated by John Deere, but by the dealer, JPM, when it decided to sell. JPM sold the business to Ison, the argument ran, so it could not claim the dealership was terminated or canceled by John Deere. The district court rejected Deere's interpretation of the relevant Wisconsin statute, which reads:

> **Cancellation and alteration of dealerships.** No grantor, directly or through any officer, agent or employee, may terminate, cancel, fail to renew or substantially change the competitive circumstances of a dealership without good cause. The burden of proving good cause is on the grantor.

Wis.Stat. § 135.03.

The district court denied John Deere's motion for summary judgment, saying, "Although I cannot say whether the plaintiff will be successful in establishing such a termination, the legal theory has merit." John Deere seems to have reconciled itself to the fact that constructive termination is a recognized legal theory under the Wisconsin Fair Dealership Law. *See, e.g., Super Valu Stores, Inc. v. D–Mart Food Stores, Inc.,* 146 Wis.2d 568, 576, 431 N.W.2d 721, 725 (Ct.App.1988), *review denied,* 147 Wis.2d 888, 436 N.W.2d 29 (1988); *see also,* Michael A. Bowen & Brian E. Butler, *The Wisconsin Fair Dealership Law* (2d ed. 1995) (agreeing that constructive termination claims are valid). This aspect of the district court's opinion was not challenged in a motion to reconsider Deere filed following the denial of its summary judgment motion.

In its motion to reconsider, Deere argued that the economic duress theory relied on by JPM to support its claim of constructive termination could not, in fact, support it. The district court, however, held that "economic duress or coercion can serve as the basis for a constructive termination claim," but that "plaintiffs making such claims must make an initial showing either that they pursued legal avenues available to remedy the alleged duress or that those remedies would not have been adequate to cure the problem." The motion to reconsider was stayed in order to give JPM an opportunity to make this initial showing. It was undisputed, however, that JPM had not pursued the injunctive relief available to it as a dealer under the Wisconsin Fair Dealership Law. JPM also failed to convince the district court that legal remedies under the Dealership Law would have been insufficient to afford it relief. The district court, therefore, granted John Deere's motion for reconsideration and entered summary judgment against JPM. JPM's appeal is now before us.

We review the district court's grant of summary judgment de novo. *Jasper Cabinet Co. v. United Steelworkers of America*, 77 F.3d 1025 (7th Cir.1996). All reasonable inferences must be viewed in the light most favorable to the nonmoving party, in this case JPM, *Bratton v. Roadway Package System, Inc.*, 77 F.3d 168 (7th Cir.1996), and summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Oliver v. Deen*, 77 F.3d 156 (7th Cir.1996).

■ We assume that constructive termination is a recognized cause of action under the Wisconsin Fair Dealership Law. On that assumption, we turn to the next step in our analysis—whether economic duress may serve as the basis for a claim of constructive termination. The short answer to this question is yes. The Fair Dealership Law is to "be liberally ... applied to promote its underlying purposes and policies." Wisconsin Statutes 135.025(1). One of the primary purposes of the law is to "protect dealers against unfair treatment by grantors, who inherently have superior economic power and superior

bargaining power in the negotiation of dealerships[.]" Wis.Stat. § 135.025(2)(b). Economic duress is but one of many ways in which a grantor may seek to exercise its "inherently superior bargaining power" to the detriment of the dealer.

■ Having concluded that economic duress can be the basis for a constructive termination claim under the Wisconsin Fair Dealership Law, we next consider what a plaintiff must do under Wisconsin law to make a showing of economic duress. The elements of economic duress were set out by the Supreme Court of Wisconsin in *Wurtz v. Fleischman*, 97 Wis.2d 100, 293 N.W.2d 155 (1980), where the court tells us that

the basic elements of economic duress which the trial court should expressly consider ... are ... :

"1. The party alleging economic duress must show that he has been the victim of a wrongful or unlawful act or threat, and

"2. Such act or threat must be one which deprives the victim of his unfettered free will.

"As a direct result of these elements, the party threatened must be compelled to make a disproportionate exchange of values or to give up something for nothing. If the payment or exchange is made with the hope of obtaining a gain, there is not duress; it must be made solely for the purpose of protecting the victim's business or property interests. Finally, the party threatened must have no adequate legal remedy."

*Wurtz* at 109–110, 293 N.W.2d 155 (quoting 13 Williston on Contracts, § 1617 at 704 (3d ed. 1970)). Where a case alleging economic distress goes to trial, these elements, all of them of course, must be proved by clear and convincing evidence. *Wurtz* at 111, 293 N.W.2d 155. So to avoid summary judgment in this case, JPM had to present evidence upon which a reasonable finder of fact could conclude that the elements of economic duress were present. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("In ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of

the substantive evidentiary burden."). We examine each of these elements in turn.

The first element of economic duress is a wrongful act or threat. JPM alleges that Deere threatened to withhold shipments and run down the dealership if its unlawful demands were not met. Deere vigorously disputes this allegation. The question of whether these threats were made is one of fact. It comes down to a credibility determination, a task, of course, that is inappropriate when considering a motion for summary judgment. *See Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir.1992) ("Summary judgment is not a procedure for resolving a swearing contest.").

■ But the dispute over this issue does not preclude summary judgment, for to do so a fact must be not only genuinely disputed, but material. A fact is material for purposes of summary judgment only if it might effect the outcome of a case under governing law. *Anweiler v. American Electric Power Service Corp.*, 3 F.3d 986 (7th Cir.1993). As our further analysis will show, the question of whether John Deere threatened JPM is not dispositive to the outcome of this case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("A complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial.").

The second *Wurtz* element leads us to inquire whether JPM was deprived of its "unfettered will." Plainly speaking, did JPM have a choice in any meaningful sense of the word? While this element may also present a question of fact, there is little room for dispute over the outcome. JPM tells us that it weighed two possible courses of action in response to Deere's alleged threats. It considered seeking injunctive relief under the Wisconsin Fair Dealership Law, but then decided, essentially, to "sell now, sue later." This issue might look different if JPM's only choices were to sell as ordered or subject itself to the unlawful actions Deere allegedly threatened. But that is not what happened. JPM had a viable third option—to go to court and prevent Deere from carrying out its threats. Why JPM made the choice it did we do not know. What we do know is that a choice was made. That the will of the dealer

was exercised is made clear by looking at what happens when we alter the equation a little. If, for example, Ison had offered JPM $200,000 for its dealership instead of $2 million, would JPM have made the same choice? We asked counsel for JPM this question at oral argument, and while she didn't really answer one way or another, the very fact that there is more than one possible answer to the question shows there was a choice to be made.

■ Even if we assume that the first two elements present disputed factual issues, neither turns out to be material in light of the last element in *Wurtz*. The final element presents the one question we are in a position to answer definitively: did JPM have an adequate remedy at law? Without question, it did.

In the district court, JPM argued that it lacked a legal remedy because it would not have been able to prove a substantial risk of irreparable injury, the first factor a court looks for in deciding whether injunctive relief is appropriate. This argument fails because the Wisconsin Fair Dealership Law provides that a violation by a grantor of any provision of the law "is deemed an irreparable injury to the dealer for determining if a temporary injunction should be issued." Wis.Stat. § 135.065. By its own testimony, JPM had up to three months before the threats would be carried out—plenty of time to seek injunctive relief. JPM presents no other reasons why injunctive relief was not available.

JPM does argue that injunctive relief would have been insufficient to remedy the situation. It claims that the grantor-dealer relationship was "clearly poisoned," and that Deere could secretly sabotage the dealership if forced by the court to maintain the relationship. Also, JPM tells us that John Deere could delay shipments of parts and equipment and fail to honor warranty work. These claims are speculative. While it's true that anyone subject to an injunction may defy a court order, we can't start from the assumption that they will do so. If we did, an injunction would always be insufficient to afford relief. There is always the chance that an injunction will be ignored, but mea-

sures exist to encourage compliance and to sanction those found to be in contempt of court. JPM's argument is based on the dubious claim that John Deere would deliberately defy a court order. JPM has failed to make any showing that an injunction—whether instructing Deere to maintain its contractual relationship with JPM or requiring the dealership to be sold through a competitive bidding process—would have been insufficient to afford full relief.

JPM also objects to the decision of the district court on the grounds that the Wisconsin Fair Dealership Law gives dealers the option of seeking damages, injunctive relief, or both. Cases interpreting the law have held that it expresses no preference between injunctive relief and damages. This is an accurate reading of the Fair Dealership Law and the cases interpreting it. *See, e.g., Frieburg Farm Equip., Inc. v. Van Dale, Inc.,* 978 F.2d 395, 403 (7th Cir.1992); *see also* Bowen & Butler, supra, at § 12.2 ("Section 135.06 provides that a dealer may seek damages or injunctive relief or both. The choice is the dealer's."). We disagree, however, that our decision in this case involves a departure from the established reading of the law. We are not saying that plaintiffs under the Fair Dealership Law must always seek legal relief or provide a good explanation why an injunction won't work in their case. Nor are we saying that injunctive relief is the preferred remedy for all plaintiffs alleging constructive discharge under the law.

Our decision is grounded in much more basic principles. Every legal theory or cause of action consists of certain basic elements. First-year law students memorize these elements at exam time: offer, acceptance, and consideration make a contract; negligence claims involve duty, breach, injury, causation, and damages. To prevail on any given theory, it is necessary to show that the basic elements of that theory are present in the case. And this is all we are saying. The plaintiffs in this case have proceeded on a claim of economic duress. In order to survive summary judgment, they had to present evidence from which a reasonable finder of fact could conclude that the elements of economic duress, as defined by the Wisconsin law that we are obligated to apply, are present. This they failed to do.

Without a valid claim of economic duress, the dealer's constructive termination claim must fail, for it is without foundation. The decision of the district court is affirmed.