In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1018

Professional Service Network, Inc.,

Plaintiff-Appellee,

v.

American Alliance Holding Company,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 99-C-381-S--John C. Shabaz, Chief Judge.

Argued September 8, 2000--Decided January 29, 2001


 Before Flaum, Chief Judge, and Posner and Rovner,
Circuit Judges.

 Posner, Circuit Judge.  This diversity suit
between two insurance companies comes to us from
the grant of summary judgment for the plaintiff,
Professional Service Network (PSN), by Chief
Judge Shabaz in the district court. The suit is
governed, so far as substantive matters are
concerned, by Wisconsin law. The appeal, by the
defendant, American Alliance Holding Company,
presents issues concerning Wisconsin's doctrine
of contractual duress and the federal principles
governing abstention in favor of a parallel
litigation pending in another court; Chief Judge
Shabaz had denied Alliance's motion to stay the
present suit in favor of a parallel suit filed by
Alliance in North Carolina. We begin by trying to
unravel the tangle, both substantive and
procedural, that is the history of the parties'
dispute.

 The story begins in February of 1998 when the
parties executed an agreement by which PSN bought
from Alliance, for $11.2 million subject to post-
closing adjustment, all the stock in another
insurance company, Century American Insurance
Company. The agreement made PSN responsible for
calculating the post-closing adjustment. In
September of 1998 it notified Alliance that
because of a decline in Century's book value,
Alliance owed it a refund of $2.7 million of the
purchase price. While negotiating over the form
in which Alliance would make the refund, the

parties got into a squabble over another contract, a risk-management agreement that was Century's principal asset. This squabble eventually went to arbitration, and the arbitrator decided that both parties were at fault and ordered no relief. Another dispute involving Century also brewed up between PSN and Alliance and resulted in a lawsuit between the parties in a North Carolina state court.

Negotiations over the refund to PSN collapsed and Alliance refused to pay. So in January of 1999 PSN sued Alliance for $2.7 million in the Western District of Wisconsin. The case was assigned to Chief Judge Shabaz.

Another provision of the stock purchase agreement by which PSN had acquired Century from Alliance required PSN jointly with Alliance to file with the Internal Revenue Service, by February 16, 1999, an election under section 338(h)(10) of the Internal Revenue Code to treat the stock sale as a sale of assets for tax purposes. The election would save Alliance $5 million in taxes. But it would be effective only if the IRS received notice of the election by the sixteenth; and having been sued by PSN, Alliance worried that PSN might not cooperate in making the deadline. Alliance decided to apply some pressure. Early in February its lawyer phoned PSN's lawyer and told her that PSN would be in breach of the stock purchase agreement if it did not cooperate in the filing of the tax notice. She replied that Alliance's failure to pay the post-closing adjustment excused PSN from performing its remaining obligations under the stock purchase agreement, including the obligation to cooperate in filing the tax notice.

On the tenth, Alliance's lawyer delivered to his opposite number a letter warning her that unless PSN joined in the filing of the tax notice, Alliance would sue for the tax benefit that would be lost. Five days later Alliance filed its answer to PSN's complaint in the Western District of Wisconsin together with a counterclaim. Alliance claimed in the counterclaim that its agreement to pay the post-closing adjustment had been orally modified. The suit was settled the next day, just in time to file the tax notice with the IRS. The parties agreed in the settlement to refer their dispute over the post-closing adjustment to an independent certified public accountant, and PSN agreed to file the tax notice jointly with Alliance; and this was done, so Alliance got its tax benefit. The suit was duly dismissed a few days later by agreement of the parties, and in April the CPA was appointed.

The following month, shortly before the CPA was

due to issue his determination of the amount of post-closing adjustment owed PSN by Alliance, Alliance filed a suit against PSN in a North Carolina state court, seeking, among other remedies, rescission of the settlement agreement on the ground that it had been procured by duress. Alliance has tried to get that lawsuit consolidated with the other North Carolina suit.

PSN responded to Alliance's new suit the next month by filing its own new suit in the Western District of Wisconsin against Alliance, seeking enforcement of the settlement agreement; and the case was again assigned to Chief Judge Shabaz. Alliance counterclaimed, seeking relief similar to what it had sought in its North Carolina suit of the previous month. On PSN's motion for summary judgment in the new Western District of Wisconsin case (which is the case before us), the judge rejected the defense of duress, declared the settlement agreement valid, and dismissed Alliance's counterclaims. He had already denied Alliance's motion to stay the case in favor of the North Carolina action. Alliance appeals both the judgment and the denial of the stay.

Alliance argues that it was financially distressed and so had no choice but to settle PSN's first suit the Western District of Wisconsin in order to receive the $5 million tax benefit immediately. Therefore, it argues, PSN obtained the settlement by duress, and so the settlement should be voided. Duress is a basis under the common law of contracts in Wisconsin as elsewhere for rescinding a contract, and a settlement is for this purpose a contract. Wurtz v. Fleischman, 293 N.W.2d 155, 160 (Wis. 1980); Pope v. Ziegler, 377 N.W.2d 201, 203 (Wis. App. 1985); JPM, Inc. v. John Deere Industrial Equipment Co., 94 F.3d 270, 272 (7th Cir. 1996) (Wisconsin law); Selmer Co. v. Blakeslee-Midwest Co., 704 F.2d 924 (7th Cir. 1983) (same); see generally E. Allan Farnsworth, Contracts sec.sec. 416-419 (3d ed. 1999). Duress, understood most concretely, is the situation in which one person obtains a temporary monopoly that it tries to use to obtain a benefit to which it is not entitled. In the famous case of Alaska Packers' Ass'n v. Domenico, 117 Fed. 99 (9th Cir. 1902), seamen on board a ship that was fishing for salmon in Alaskan waters during the short fishing season struck for higher wages. The captain agreed to modify the workers' employment contract to pay them the higher wages that they were demanding, but when the ship returned to port the employers refused to honor the modification and the court refused to enforce it. The captain had acted under duress in agreeing to the modification because, had he not done so, the fishing season would have been ruined, since the strikers had an

effective albeit temporary monopoly of the labor supply necessary to continue with the fishing; and it would not have been feasible to sue them as a means of recouping the loss. See also Contempo Design, Inc. v. Chicago & Northeast Illinois District Council of Carpenters, 226 F.3d 535, 550 n. 9 (7th Cir. 2000); Rissman v. Rissman, 213 F.3d 381, 387 (7th Cir. 2000); Oxxford Clothes XX, Inc. v. Expeditors Int'l of Washington, Inc. 127 F.3d 574, 579 (7th Cir. 1997); Austin Instrument, Inc. v. Loral Corp., 272 N.E. 2d 533 (N.Y. 1971).

So we must ask whether PSN had a monopoly-like position vis-a-vis Alliance when it demanded that Alliance settle the case as a condition precedent to PSN's jointly filing the tax notice that Alliance was (we may assume) desperate for. The answer is no. Part of the reason is that unlike the captain of the fishing vessel, Alliance had a legal remedy right at hand. Even if a liquidity crisis would have made its normal remedy, namely fighting the case to judgment, inadequate to stave off disaster, it had only to ask Chief Judge Shabaz for a temporary restraining order or, if time permitted--and it did permit, as we're about to see--a preliminary injunction requiring that PSN join in the filing of the tax notice. The inadequacy of the legal remedy and resulting irreparable harm to Alliance unless it obtained judicial protection against PSN's settlement demand would have established a prerequisite for equitable relief. Alliance would not even have had to file a new suit in order to obtain such relief. The suit that the parties were negotiating to settle was filed and pending. Alliance had only to file a motion with Chief Judge Shabaz.

Alliance argues that the time was too short. It was not, and anyway the fault lay with it for not doing anything to stop the clock before time ran out on February 16. Alliance should have realized no later than when it read PSN's complaint--filed on January 14, 1999, more than a month before the tax deadline--that PSN was likely to balk at the joint filing. PSN's suit charged Alliance with having reneged on the post-closing-adjustment term of the stock purchase agreement, and it was only to be expected that PSN would take the position that its duty to perform under the agreement was suspended by Alliance's breach. It is true that not every breach excuses the other party from continued performance; in particular, minor breaches do not. Ranes v. American Family Mutual Ins. Co., 580 N.W.2d 197, 200 (Wis. 1998); Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co., 557 N.W.2d 67, 77 (Wis. 1996); Myrold v. Northern Wisconsin Cooperative Tobacco Pool, 239 N.W. 422 (Wis. 1931); Farnsworth, supra

sec. 8.15, pp. 580-81. But Alliance's alleged breach, the refusal to refund almost 25 percent of the contract price, was not minor. Any doubts that PSN would balk were dispelled by the phone conversation between the parties' lawyers and at this point Alliance still had at least a week in which to apply for judicial relief. It piddled the week away. It says it did this because it expected the case to settle, as of course the case did. But it should have known that unless it took steps to obtain judicial relief, PSN would have no incentive to abandon its position that the refusal to refund excused it from having to join in the filing of the tax notice--unless Alliance yielded to PSN's settlement demand.

We said that Alliance's failure to seek judicial help was part of the reason its defense of duress failed as a matter of law. It was not the whole reason because if PSN's claim to be excused from cooperating in the filing of the tax notice by Alliance's refusal to make the refund had been frivolous, an inference would have arisen that the purpose had been to force Alliance to incur expenses of litigation that alone might have been enough, given Alliance's distressed financial position, to force it to accede to those terms; and then Alliance might have a valid case of duress. Sufrin v. Hosier, 128 F.3d 594, 599 (7th Cir. 1997); Farnsworth, supra, sec. 4.17, p. 267. The analogy to the tort of malicious prosecution would be close in such a case. Another way to state the principle is that exhaustion of remedies is not a prerequisite to suing for duress, since, if it were, a party in PSN's position (or in the position of the Alaska seamen) might be able to use the costs of suit as a lever to obtain an undeserved benefit. Even a colorable suit brought or maintained for an improper purpose--not to win the suit but to obtain some collateral benefit (the classic example is suing your daughter's fiancee in the hope that the strain of litigation will cause the engagement to be broken off)--is actionable in tort, as an abuse of process, though we needn't try in this case to align that tort principle with the doctrine of duress in the law of contracts.

Far from arguing that PSN's litigating position was frivolous or an abuse of process, however, Alliance, in an effort to explain why it dribbled away the week before the tax deadline, emphasizes the difficulty it would have had in marshaling a convincing case for judicial relief against PSN's refusal to play ball in the filing of the tax notice. That is tantamount to an acknowledgment that PSN had a colorable case for conditioning the performance of its obligation with respect to the tax notice on Alliance's paying the post-

closing adjustment as required by the stock purchase agreement. We add that the term that was "forced" on Alliance by PSN hardly seems extortionate, namely referring the calculation of the post-closing adjustment to an independent CPA. And that too is material to an assessment of a defense of duress. Wurtz v. Fleischman, supra, 293 N.W.2d at 160. If the alleged victim of duress is complaining about a term that he could have been expected to agree to even if not under duress, the inference of duress is weakened, along with the further inference that duress caused whatever harm the victim is seeking to redress.

We turn to the denial of the stay of the North Carolina litigation. There is no hard and fast rule on when parallel litigation should be stayed in the interest of judicial economy. See, e.g., Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 16 (1983); Colorado River Water Conservation District v. United States, 424 U.S. 800, 817-18 (1976); Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1288-90 (7th Cir. 1988). But the history of the parties' dispute makes this an easy case. The case originated in a settlement of the previous lawsuit between these parties that had been assigned to Chief Judge Shabaz. His was the logical court, and he the logical judge of that court, to resolve a dispute over the settlement of the earlier case. The fact that Alliance beat PSN to the filing by a month in an effort to obtain a friendlier forum (the North Carolina state court) was a very poor reason for staying the suit that had been filed in the most appropriate forum. Cf. Allendale Mutual Ins. Co. v. Bull Data Systems, Inc., 10 F.3d 425, 431 (7th Cir. 1993); Tempco Electric Heater Corp. v. Omega Engineering, Inc., 819 F.2d 746, 749-50 (7th Cir. 1987). True, another case between the parties was pending in North Carolina, but the issues in it appear to be unrelated to the dispute stemming from the post-closing adjustment term of the stock purchase agreement.

So the district court must be affirmed. But before closing we must remark a recurrent procedural matter--the frequent failure of litigants in this court, in this case both litigants, to comply with 7th Cir. R. 28(a) and (b), concerning the statement of subject-matter jurisdiction in the appellant's and appellee's brief in a diversity case. Rule 28(a)(1) requires the appellant in its brief in such a case to state the citizenship of each party, and if the party is a corporation to indicate both the state of incorporation and the state of the party's principal place of business, and if an unincorporated association to indicate the

citizenship of each of its members. Rule 28(b) requires the appellee to submit its own jurisdictional statement if the appellant's is not complete and correct. Both rules were flouted here.

So far as the citizenship of the parties is concerned, all the appellant's brief stated is that this suit is "brought by a Wisconsin Plaintiff, Professional Service Network, Inc. ('PSN') against a North Carolina Defendant, American Alliance Holding Company ('American Alliance')." The plaintiff was thus identified as a corporation, triggering the requirement of stating its place of incorporation and the place of its principal place of business, but neither was stated. The character of the defendant, whether a corporation or an unincorporated association, was not indicated. Despite the palpable nonconformity of the appellant's brief with the requirement of Rule 28(a)(1), the appellee's brief recited that the statement of jurisdiction in the appellant's brief was complete and correct. We directed the parties to show cause why the appeal should not be dismissed as a sanction for the flagrant violation of the court's rules. The parties' response demonstrated that there was indeed diversity, and so we have relented; but we take this occasion to remind the bar of the importance of complying with our rules and of the risk that violators run of being sanctioned.

Affirmed.