KLOPPENBURG, J.[1]
¶1 Thair Kutkut signed a contract with J.C. Property Management, LLC for eviction move-out services. J.C. Property brought this small claims action alleging that Kutkut had failed to make the contractually agreed payments for the move-out services it provided. Following a trial to the circuit court, the court determined that Kutkut had breached the contract and entered judgment against Kutkut in the amount of the remaining balance on J.C. Property's invoice, plus costs. Kutkut appeals, arguing that: (1) the contract is ambiguous; (2) the contract is unconscionable; and (3) the contract was formed under economic duress. As explained below, I reject each of Kutkut's arguments and affirm.
BACKGROUND
¶2 The following facts are undisputed. I recite additional facts as needed in the discussion below.
¶3 Kutkut has managed a residential property located in Sun Prairie, Wisconsin for approximately eight years. In May 2017, Kutkut obtained a judgment of eviction against the tenant who occupied the property at that time. Shortly after obtaining the judgment, Kutkut contacted J.C. Property, a moving company that performs eviction move-outs, to arrange for it to remove the tenant's personal property. J.C. Property sent Kutkut its standard contract for eviction move-outs, and Kutkut signed the contract.
¶4 Among various other terms, the contract Kutkut signed provides that the "landlord" will be billed for the "Crew Rate," "Warehouse handling," "Warehouse storage," and "Packing/box charges." The contract also sets out specific costs for each of those services.
¶5 Kutkut deposited $8,400 with J.C. Property prior to the move.
¶6 After completing the move-out, J.C. Property sent Kutkut an invoice describing the services rendered and the cost for those services. The services listed on the invoice include "Warehouse Handling," "Warehouse Storage," "Crew Hourly Rate," and certain box and carton items. The invoice applied the contractual cost for each of the services and arrived at a total cost of $13,430.63. The invoice then deducted Kutkut's deposit of $8,400 from that total, for a final outstanding balance of $5,030.63. Kutkut did not pay the balance on the invoice.
¶7 J.C. Property filed this small claims action, alleging that Kutkut had breached the contract by failing to pay the agreed-upon sum. Following a two-day trial to the circuit court, the court entered judgment in favor of J.C. Property in the amount of $5,784.65. Kutkut appeals.
DISCUSSION
¶8 On appeal, Kutkut does not develop any argument that the final invoice sent by J.C. Property inaccurately reflects the work the company performed. Instead, as stated above, Kutkut argues that the contract itself does not require him to pay the outstanding balance on the invoice because: (1) the contract is ambiguous and should be construed against J.C. Property; (2) the contract is unconscionable and therefore void; and (3) the contract was formed under economic duress.[2] I address and reject each argument in turn.
I. Ambiguity
¶9 Kutkut's first argument as to why he is not obligated to pay the outstanding balance on the invoice is that the contract is ambiguous. The interpretation of a contract is a question of law, which is reviewed de novo. Borchardt v. Wilk , 156 Wis. 2d 420, 427, 456 N.W.2d 653 (Ct. App. 1990). Whether a contract is ambiguous is also a question of law. Id .
¶10 "The court's goal in interpreting a contract is to give effect to the parties' intentions." Ash Park, LLC v. Alexander & Bishop, Ltd. , 2015 WI 65, ¶34, 363 Wis. 2d 699, 866 N.W.2d 679. "We ascertain the parties' intentions by looking to the language of the contract itself." Seitzinger v. Cmty. Health Network , 2004 WI 28, ¶22, 270 Wis. 2d 1, 676 N.W.2d 426. Thus, "[w]here the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms." Maryland Arms Ltd. v. Connell , 2010 WI 64, ¶23, 326 Wis. 2d 300, 786 N.W.2d 15 (quoted source omitted). However, when contract language is ambiguous, a court may look beyond the contract to extrinsic evidence of the contracting parties' intent. Id . After the court has considered the extrinsic evidence, any remaining ambiguity is construed against the drafter. Ash Park , 363 Wis. 2d 699, ¶36.
¶11 A contract is ambiguous if "its terms are reasonably or fairly susceptible of more than one construction." Borchardt , 156 Wis. 2d at 427. Additionally, a contract provision that by itself appears unambiguous may become contextually ambiguous if it is susceptible to more than one interpretation when read in the context of other language in the contract. Maryland Arms , 326 Wis. 2d 300, ¶¶39-40 ; see also Folkman v. Quamme , 2003 WI 116, ¶24, 264 Wis. 2d 617, 665 N.W.2d 857 ("it has long been a rule of contract construction in Wisconsin that 'the meaning of particular provisions in the contract is to be ascertained with reference to the contract as a whole.' " (quoted source omitted)).
¶12 The contract here contains the following pertinent provisions:
2. Crew Rate. The bank/law firm/landlord ordering the move is responsible for the time when the crew LEAVES our warehouse until they return. This does not include a lunch break, but does include the travel time to and from the job; and any waiting time required. The cost for each crew member is at $50 per hour.
3. Warehouse handling. There is a 1000# minimum weight for all storage accounts. If the evictee's items weigh less than 1000#'s the bank/law firm/landlord ordering the move and evictee will be billed based on a 1000# weight. The cost for handling is at $4.00 CWT. per each 1000#s. Bank/law firm/landlord ordering the move is responsible for warehouse handling on the shipment.
4. Warehouse Storage. The 1000# minimum weight applies to warehouse storage. The cost for storage is at $ 4.00 CWT. per each 1000#s. Bank/law firm/landlord ordering the move is responsible for the 1st month's storage on the shipment. If/when the evictee pays their storage bill in full the 1st month of storage will be reimbursed back to the bank/law firm/landlord ordering the move.
5. Packing/box charges. Bank/law firm/landlord ordering the move is responsible for Carton/packing Charges. Chart of charges listed on page 2.
Page two of the contract contains tables listing the "Carton/Packing" costs for various types of items.
¶13 As I read his briefing, Kutkut does not dispute that the language of these provisions is "clear and unambiguous." Maryland Arms , 326 Wis. 2d 300, ¶23 (" 'Where the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms.' " (quoted source omitted)). That is, he does not challenge the conclusion that the contract, within its four corners, lists the services provided and sets out the cost for each of the services listed. Rather, he asserts that the contract, as a whole, is ambiguous because it omits certain details regarding the exact "process" J.C. Property uses when conducting a move; that is, the contract does not identify all of the tasks for which labor charges are imposed. In support of this argument, Kutkut points to evidence that J.C. Property is a "bonded" moving company that is one of two companies listed by the Sheriff's Office to perform eviction move-outs. He points to additional evidence that as a bonded mover, J.C. Property had to comply with various rules requiring it to take "extra care ... in inventorying, packing, [and] boxing the property," which increased the amount of labor that the company performed during the move at issue in this case. He argues that, because the contract did not specify that J.C. Property is a bonded mover nor state the amount of labor that would be performed, he reasonably believed that the total move would cost "around $1,500," not the $13,430.63 that was actually charged. According to Kutkut, the contract is therefore "reasonably susceptible to more than one construction," since reasonable minds could form different expectations regarding the total cost of the move.
¶14 Kutkut's argument is unavailing for at least four reasons. First, Kutkut cites no legal authority to support his apparent proposition that a contract is ambiguous if it does not state the total amount to be charged for the services contracted. Therefore, I do not consider this proposition further. See Young v. Young , 124 Wis. 2d 306, 312, 369 N.W. 2d 178 (Ct. App. 1985) (this court will refuse to consider an argument without legal authority specifically supporting the relevant propositions).
¶15 Second, as stated above, extrinsic evidence is admissible to aid the construction of a contract only when the contract language is ambiguous. Maryland Arms , 326 Wis. 2d 300, ¶23. Extrinsic evidence cannot be used to create an ambiguity. Erickson v. Gundersen , 183 Wis. 2d 106, 117, 515 N.W.2d 293 (Ct. App. 1994) ("In determining whether a contract is ambiguous, we look only to the contents of the document or documents themselves."). Here, Kutkut has not developed any argument that the language of the contract itself is ambiguous, nor has he explained why it is appropriate to look to the extrinsic evidence of J.C. Property's bonded status when no ambiguity exists within the four corners of the contract. In other words, Kutkut has not provided any reason why the analysis should not end with the determination that the contract terms, on their face, are "clear and unambiguous." Maryland Arms , 326 Wis. 2d 300, ¶23.
¶16 Third, Kutkut's argument that the contract is susceptible to more than one construction because he testified that he believed that the total cost would be "around $1,500" is unpersuasive. Again, Kutkut does not explain why extrinsic evidence of his subjective belief regarding the cost is admissible to create an ambiguity when the terms of the contract are themselves unambiguous. See id . Moreover, "[i]t is not the function of the court to relieve a party to a freely negotiated contract of the burdens of a provision which becomes more onerous than had originally been anticipated." Ash Park , 363 Wis. 2d 699, ¶38 (quoted source omitted). Here, Kutkut freely agreed to be bound by the costs set out in paragraphs 2-5 of the contract. The fact that the application of those costs ultimately resulted in a bill higher than he originally anticipated is insufficient to render the contract ambiguous.
¶17 Fourth, Kutkut implies that contextual ambiguity exists because paragraph nine of the contract states that J.C. Property will not move mattresses, while the table on page two of the contract lists costs for packing mattresses. This argument goes nowhere because it is undisputed that J.C. Property did not charge Kutkut for the packaging or removal of any mattress. Therefore, any ambiguity, if it exists, has no bearing on the contract dispute in this case. See Marotz v. Hallman , 2007 WI 89, ¶39, 302 Wis. 2d 428, 734 N.W.2d 411 ("For inconsistencies to alter the construction of an otherwise unambiguous provision, the inconsistencies must be 'material to the issue in dispute....' " (quoted source omitted)).
¶18 In sum, the terms of the contract clearly and unambiguously set out the services performed by J.C. Property and the costs of those services. Kutkut does not offer any cognizable argument that the language of the contract is susceptible to more than one construction. I therefore reject Kutkut's contention that the contract is ambiguous.
II. Unconscionability
¶19 Kutkut next argues that the contract is void because it is unconscionable. "For a contract or a contract provision to be declared invalid as unconscionable, the contract or contract provision must be determined to be both procedurally and substantively unconscionable." Wisconsin Auto Title Loans,Inc. v. Jones , 2006 WI 53, ¶29, 290 Wis. 2d 514, 714 N.W.2d 155. To determine whether procedural unconscionability exists, a court must determine whether there was " 'a real and voluntary meeting of the minds' of the contracting parties." Id ., ¶34 (quoted source omitted). In doing so, the court considers factors related to the formation of the contract, including "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms would have been permitted by the drafting party, and whether there were alternative providers of the subject matter of the contract." Id .
¶20 Substantive unconscionability, on the other hand, "addresses the fairness and reasonableness of the contract provision subject to challenge." Id ., ¶35. The test is whether, " 'in the light of the general commercial background,' " the contract terms are " 'commercially reasonable,' that is, whether the terms lie outside the limits of what is reasonable or acceptable." Id ., ¶36 (quoted sources omitted).
¶21 "The validity of a contract provision involves determinations of fact and law. A reviewing court will not set aside a circuit court's finding of fact unless clearly erroneous.... Whether the facts found by the circuit court render a contractual provision unconscionable is a question of law that a reviewing court determines independently of the circuit court...." Id. , ¶25. Kutkut does not challenge the circuit court's findings of fact as to either procedural or substantive unconscionability. Rather, he appears to challenge only the court's application of the law to those facts. His challenge fails for the following reasons.
¶22 Kutkut argues that the contract is procedurally unconscionable because there was no "real and voluntary meeting of the minds." Specifically, he "incorporates by reference" his argument on ambiguity, which he asserts establishes that no meeting of the minds existed because he expected the total cost to be much less than what was ultimately charged. However, I have already explained why the written terms of the contract are unambiguous. Because those terms represent the parties' intention at the time of the formation of the contract, Seitzinger , 270 Wis. 2d 1, ¶22 ("We ascertain the parties' intentions by looking to the language of the contract itself."), Kutkut has not established the absence of a "real and voluntary meeting of the minds."
¶23 Kutkut also "incorporates by reference his argument on ambiguity" to support his argument as to substantive unconscionability. Kutkut states in a conclusory fashion that the mismatch between his expectation of the total cost and the actual total cost establishes that "fairness and reasonableness were lacking" in the contract terms. However, Kutkut does not offer any argument or factual citations regarding the reasonableness of the contract terms, the reasonableness of his own expectation of the total cost, or the reasonableness of the actual total cost.[3] His argument on substantive unconscionability is therefore undeveloped, and I do not consider it further. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (court may refuse to consider undeveloped arguments).
¶24 In sum, Kutkut fails to show that the contract is unconscionable.
III. Economic Duress
¶25 Finally, Kutkut argues that the contract was formed under economic duress. The standard for economic duress was stated in Wurtz v. Fleischman , 97 Wis. 2d 100, 293 N.W.2d 155 (1980) :
"1. The party alleging economic duress must show that he [or she] has been the victim of a wrongful or unlawful act or threat, and
"2. Such act or threat must be one which deprives the victim of his [or her] unfettered will.
"As a direct result of these elements, the party threatened must be compelled to make a disproportionate exchange of values or to give up something for nothing. If the payment or exchange is made with the hope of obtaining a gain, there is not duress; it must be made solely for the purpose of protecting the victim's business or property interests. Finally, the party threatened must have no adequate legal remedy."
97 Wis. 2d at 109-10 (citations and quoted sources omitted).
¶26 Kutkut's arguments on economic duress are difficult to follow. Nevertheless, I understand him to make three arguments why economic duress is present in this case: (1) he was the victim of fraud or misrepresentation regarding the total cost of the move and the amount of labor that would be required; (2) he was deprived of his unfettered free will because he had no choice of different moving companies; and (3) he was deprived of his unfettered free will because, on the day of the move, J.C. Property threatened to refuse to carry out the move if Kutkut did not provide a larger deposit.
¶27 In its response, J.C. Property offers various reasons why each of Kutkut's arguments is incorrect. As to Kutkut's first argument, J.C. Property argues that Kutkut did not raise any fraud or misrepresentation argument before the circuit court and so "waived" the argument on appeal. See State Farm Mut. v. Hunt , 2014 WI App 115, ¶32, 358 Wis. 2d 379, 856 N.W.2d 633 (" '[a]rguments raised for the first time on appeal are generally deemed forfeited' " (quoted source omitted)). J.C. Property also argues that the record citations Kutkut provides do not establish that J.C. Property misrepresented the cost of the move.
¶28 As to Kutkut's second argument, J.C. Property argues that at the time of the eviction, Kutkut had the option of obtaining a new eviction judgment and performing the move himself. In addition, the record shows that before the eviction, Kutkut had the options of hiring one other bonded moving company approved by the Sheriff's Office, or moving the property himself.
¶29 As to Kutkut's third argument, J.C. Property argues that it made no wrongful or unlawful threat against Kutkut because, without an additional deposit, it had the contractual right to refuse to perform the move. Furthermore, J.C. Property argues that Kutkut "hoped to obtain a gain" when he agreed to the additional deposit because he wanted to obtain possession of the house, and that he had the alternative remedy of obtaining another eviction judgment if he refused to pay the deposit. According to J.C. Property, under Wurtz , these facts show that there was no economic duress. See 97 Wis. 2d at 109-10.
¶30 In his reply brief, Kutkut does not challenge any of J.C. Property's arguments. Instead, in his three-sentence, bullet-pointed section on economic duress, Kutkut states only that "Appellant Kutkut hereby disputes the Respondent's propositions on unconscionability." Even overlooking the fact that Kutkut misstates the subject of his dispute-it is apparent that he means to dispute "economic duress," not "unconscionability"-his cursory and perfunctory statement does not develop any argument explaining why the arguments made by J.C. Property are legally or factually wrong. J.C. Property's arguments are therefore deemed admitted. See Fischer v. Wisconsin Patients Comp. Fund , 2002 WI App 192, ¶1 n.1, 256 Wis. 2d 848, 650 N.W.2d 75 ("An argument asserted by a respondent on appeal and not disputed by the appellant in the reply brief is taken as admitted.").
¶31 In sum, Kutkut fails to show that the contract was formed under economic duress.
CONCLUSION
¶32 For the reasons explained above, the judgment of the circuit court is affirmed.
By the Court -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(a) (2015-16). All references to the Wisconsin statutes are to the 2015-16 version unless otherwise stated.

Kutkut's briefing is unfocused and at times difficult to follow. To the extent that I do not specifically address each and every argument that Kutkut has attempted to present in his briefs, the arguments are denied. See Libertarian Party of Wisconsin v. Wisconsin , 199 Wis. 2d 790, 801, 546 N.W.2d 424 (1996) (appellate court need not discuss arguments unless they have "sufficient merit to warrant individual attention").
Also, on appeal, a party must include appropriate factual references to the record in its briefing. Wis. Stat. Rule 809.19(1)(d)-(e). The vast majority of Kutkut's citations in support of his factual assertions are, instead, to his appendix. The appendix is not the record. United Rentals, Inc. v. City of Madison , 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322. This is no minor matter. An appendix is a helpful tool when panel judges conduct an initial review of the briefs and, therefore, parties typically provide appendix cites, as Kutkut does here. But, when the case is assigned for drafting, we look directly to the record to verify factual assertions in a brief. The absence of record cites forces us to look to the appendix to determine where to look in the record. Kutkut compounds this error by failing to identify the record numbers to which his appendix corresponds in his appendix's table of contents. I warn counsel that future violations of the Rules of Appellate Procedure may result in sanctions. See Wis. Stat. Rule 809.83(2).

I note that at trial Carmen Copus of J.C. Property testified that she believed the total cost was reasonable based on the amount of work performed, and Deputy Sheriff Brian Smith testified that he had "heard of moving bills being anywhere from a couple thousand dollars to $40,000."