STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, Plaintiff-Respondent,†

v.

Barry E. HUNT and Ashley M. Hunt,
Defendants-Appellants,

Richard LOEPER, Defendant.

Court of Appeals

*No. 2013AP2518. Submitted on briefs May 8, 2014.
—Decided October 2, 2014.*

2014 WI App 115

(Also reported in 856 N.W.2d 633.)

† Petition for review filed.

379

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Jesse B. Blocher* and *Christopher E. Rogers* of *Habush Habush & Rottier S.C.*, Waukesha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Claude J. Covelli* of *Boardman & Clark LLP*, Madison.

A nonparty brief was filed by *William C. Gleisner, III* of *Law Offices of William Gleisner*, Hartland, for the Wisconsin Association For Justice.

A nonparty brief was filed by *James A. Friedman* and *Douglas M. Poland* of *Godfrey & Kahn, S.C.*, Madison, for the Wisconsin Insurance Alliance.

Before Blanchard P.J., Lundsten and Kloppenburg, JJ.

¶ 1. BLANCHARD, P.J. This case arises from a collision between a vehicle driven by Barry Hunt and a snow plow owned by Dane County and operated by a county employee. Barry Hunt and his wife, Ashley Hunt, had a motor vehicle liability policy with State Farm Mutual Insurance Co. at the time of the collision. The damages recoverable from the county and its employee are capped by statute at $250,000, WIS. STAT. § 345.05(3) (2011–12), and the Hunts claimed damages greater than that amount. The issue presented is whether the Hunts can rely on their policy, as affected by the underinsured motorist coverage provisions found at WIS. STAT. § 632.32(2) and (4) (2009–10),[1] to recover their damages arising out of this collision in excess of $250,000 and up to the limits of the underinsured motorist coverage required by statute.

¶ 2. The circuit court granted summary judgment to State Farm, concluding that the Hunts could not recover damages in excess of $250,000 under their policy as affected by the underinsured motorist coverage law for two reasons: (1) the Hunts are not "legally entitled to recover" damages, within the meaning of WIS. STAT. § 632.32(2)(d), beyond the $250,000 statutory liability cap applicable to a claim against a municipality

---

[1] Because the policy at issue in this appeal is based on the 2009–10 version of WIS. STAT. § 632.32, all future references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

for negligent operation of a vehicle; and (2) government owned vehicles are excluded from the definition of an underinsured motor vehicle under the terms of the Hunts' policy.

¶ 3. We conclude that the Hunts are "legally entitled to recover" damages within the meaning of Wis. Stat. § 632.32(2)(d) and that, assuming that the definition of underinsured motor vehicle in the Hunts' policy included an exclusion for government-owned vehicles, this exclusion is void under § 632.32. Therefore, we reverse the decision of the circuit court granting summary judgment to State Farm.

## BACKGROUND

¶ 4. The following facts or allegations are undisputed for the purposes of this appeal. Barry Hunt sustained serious injuries as a result of a collision between his vehicle and a Dane County snow plow in January 2012. These injuries were caused by a county employee's negligence. The Hunts filed a notice of claim, in accordance with Wis. Stat. § 893.80(1d) (2011–12), claiming $5,850,000 in damages against the county and its employee.

¶ 5. Pursuant to Wis. Stat. § 345.05(3) (2011–12), the damages recoverable from the county and its employee are capped at $250,000.

¶ 6. At the time of the collision, the Hunts had a motor vehicle liability insurance policy with State Farm, which had been issued on October 10, 2011. The date matters because at that time Wis. Stat. § 632.32, which sets forth requirements for motor vehicle insurance, required all motor vehicle liability policies to provide underinsured motorist coverage. *See* § 632.32(1),

(4)(a)2m.[2] Under this version of the law, underinsured motorist coverage was defined by statute as follows:

> coverage for the protection of persons insured under that coverage who are legally entitled to recover damages for bodily injury, death, sickness, or disease from owners or operators of underinsured motor vehicles.

Sec. 632.32(2)(d). This statute further defined an underinsured motor vehicle as a motor vehicle to which the following subsections apply, as pertinent to the issues raised in this appeal:

> 2. At the time of the accident, a bodily injury liability insurance policy applies to the motor vehicle[,] or the owner or operator of the motor vehicle has furnished proof of financial responsibility . . . or is a self-insurer . . . .
>
> 3. The limits under the bodily injury liability insurance policy or with respect to the proof of financial responsibility or self-insurance are less than the amount needed to fully compensate the insured for his or her damages.

Sec. 632.32(2)(e).

¶ 7. Pursuant to Wis. Stat. § 632.32(4)(a)2m., the Hunts' State Farm policy provided underinsured motorist coverage in the amount of $100,000 per person or $300,000 per accident. The insuring agreement provided that State Farm "will pay compensatory damages for **bodily injury** an **insured** is legally entitled to recover from the owner or driver of an **underinsured**

---

[2] This law was amended in 2011 to repeal the underinsured motorist coverage requirement. 2011 Wis. Act 14, §§ 15c, 17m, 19m. Policies effective after November 1, 2011, are not required to include underinsured motorist coverage, although insurers are required to notify policyholders of the availability of underinsured motorist coverage. Wis. Stat. § 632.32(4m)(a) (2011–12).

386

**motor vehicle . . . ."** The Hunts' policy exempted vehicles **"owned by** or rented to any government" from its definition of an underinsured motor vehicle. However, an endorsement to the policy redefined an underinsured motor vehicle and, in doing so, did not include any language regarding an exclusion for government vehicles.

¶ 8. The Hunts sought recovery pursuant to their underinsured motorist coverage. State Farm filed a complaint for declaratory judgment and a motion for summary judgment seeking a declaration that the Hunts' policy, as affected by WIS. STAT. § 632.32, does not provide underinsured motorist coverage for the collision. State Farm argued that the only damages the Hunts are "legally entitled to recover" from the county and its employee are capped by statute at $250,000, and that there is no dispute that damages up to that amount are otherwise fully covered. State Farm also argued that the snow plow was not an underinsured motor vehicle because it was owned by a governmental unit.

¶ 9. The circuit court granted State Farm's motion for summary judgment, concluding that State Farm was not required to provide underinsured motor vehicle coverage for both of the reasons offered by State Farm. Relying on *State Farm Mutual Auto Insurance Co. v. Gillette*, 2002 WI 31, 251 Wis. 2d 561, 641 N.W.2d 662, the court interpreted the phrase "legally entitled to recover" to refer to the amount of damages the Hunts could actually recover from the county and its employee. Because the Hunts could recover only $250,000 under the cap established by statute, the court determined that the Hunts were not "legally entitled to recover" sums in excess of that and their State Farm underinsured motorist coverage did not apply. As a separate ground for granting summary judgment, the

court determined that the exclusion of government-owned vehicles from the definition of an underinsured motor vehicle was retained in the endorsement, and that this exclusion was valid pursuant to WIS. STAT. § 632.32(5)(e). The Hunts now appeal.

## DISCUSSION

¶ 10. The Hunts argue that the circuit court erred in granting summary judgment in favor of State Farm for two reasons. First, the Hunts argue that the phrase "legally entitled to recover" in WIS. STAT. § 632.32(2)(d) means that the Hunts' underinsured motorist coverage applies whenever the insured demonstrates a valid tort claim for damages against the operator of an underinsured motor vehicle. Second, the Hunts argue that the endorsement to their State Farm policy did not exclude government vehicles from the definition of an underinsured motor vehicle and, even if it did, that this exclusion is invalid under § 632.32. For the reasons explained below, we agree with the Hunts on the interpretation of § 632.32(2)(d) and agree that an exclusion for government vehicles is invalid under § 632.32.

¶ 11. This court reviews a grant of summary judgment de novo, applying the same methodology as the circuit court. *See* WIS. STAT. § 802.08; *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). A party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sec. 802.08(2).

¶ 12. The decision to grant or deny a declaratory judgment rests within the circuit court's sound discre-

tion. *Olson v. Farrar*, 2012 WI 3, ¶ 24, 338 Wis. 2d 215, 809 N.W.2d 1. However, where the circuit court's exercise of discretion turns on a question of law, we review the court's decision de novo. *Id.* This case involves the application of a statute, WIS. STAT. § 632.32, which is a legal issue and, thus, our review is de novo. *See Marotz v. Hallman*, 2007 WI 89, ¶ 15, 302 Wis. 2d 428, 734 N.W.2d 411.

¶ 13. We note at the outset that the parties agree that State Farm was required to provide underinsured motorist coverage to the Hunts as mandated by WIS. STAT. § 632.32(4)(a)2m., and that the policy could not provide less coverage than required by statute. *See Blazekovic v. City of Milwaukee*, 2000 WI 41, ¶ 37, 234 Wis. 2d 587, 610 N.W.2d 467 ("[A]n insured may not receive less coverage than that mandated by the statute."); *Trampf v. Prudential Prop. & Cas. Co.*, 199 Wis. 2d 380, 386, 544 N.W.2d 596 (Ct. App. 1996) ("An insurance policy may expand but not reduce the coverage required by [law]."). Thus, the parties frame their arguments in terms of the requirements for underinsured motorist coverage mandated by statute, and we have no reason to interpret policy language.

¶ 14. Statutory interpretation " 'begins with the language of the statute.' " *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* We interpret the language of the statute "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and

reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. The "scope, context, and purpose" of a statute are relevant to a plain meaning interpretation as long as they are "ascertainable from the text and structure of the statute itself." *Id.*, ¶ 48. If the language of the statute is unambiguous, "there is no need to consult extrinsic sources of interpretation, such as legislative history." *Id.*, ¶ 46.

██ ██

¶ 15. If, however, the language of the statute is ambiguous, we turn to "interpretive resources outside the statutory text," most commonly legislative history, in order to ascertain its meaning. *Id.*, ¶¶ 48–50. A statute is ambiguous where "it is capable of being understood by reasonably well-informed persons in two or more senses." *Id.*, ¶ 47.

██ ██

¶ 16. "The purpose of [Wis. Stat.] § 632.32 . . . is to assure insurance coverage to accident victims. Thus, [it] must be broadly construed so as to increase rather than limit coverage." *Kettner v. Wausau Ins. Cos.*, 191 Wis. 2d 723, 742, 530 N.W.2d 399 (Ct. App. 1995).

## I. *Legally Entitled to Recover Damages*

██ ██

¶ 17. The parties first dispute whether the Hunts may recover damages in excess of $250,000 and up to the limits of their policy's underinsured motorist coverage, as affected by Wis. Stat. § 632.32. To repeat, underinsured motorist coverage "means coverage for the protection of persons insured under that coverage who are legally entitled to recover damages . . . from owners or operators of underinsured motor vehicles."

*See* § 632.32(2)(d). Therefore, the resolution of this dispute depends on whether the Hunts are "legally entitled to recover" damages from the county.

¶ 18. Neither party argues that the phrase "legally entitled to recover" is ambiguous but, rather, each party argues that a plain meaning interpretation of that phrase supports its position. The Hunts contend that the meaning of this phrase is that the insured seeking underinsured motorist coverage must demonstrate a valid tort claim for damages against the underinsured motorist, but need not show that all alleged damages sustained by the insured are recoverable from the tortfeasor. State Farm argues, to the contrary, that the meaning of "legally entitled to recover" is that the insured has coverage only "up to the amount for which the tortfeasor is liable under applicable tort law," an amount that, here, is limited by the statutory cap. Therefore, State Farm argues, because the Hunts cannot recover damages in excess of $250,000 from the county or its employee due to the statutory limit on governmental liability, their underinsured motorist coverage does not apply here.

¶ 19. We turn first to the language of the statute.[3] The subject of the phrase "legally entitled to recover" is the insured. The word "recover" means "[t]o obtain by a judgment or other legal process . . . [t]o obtain damages or other relief; to succeed in a lawsuit or other legal proceeding." BLACK'S LAW DICTIONARY 1280 (7th ed. 1999). Thus, by its terms, the statute mandates underinsured

---

[3] In interpreting WIS. STAT. § 632.32(2)(d), we are assisted by the unpublished decision *Cordie v. American Family Mutual Insurance Co.*, No. 2013AP1772, unpublished slip op. (WI App April 9, 2014), for its persuasive value. *See* WIS. STAT. RULE 809.23(3)(b). The *Cordie* court addressed the issue presented here.

391

motorist coverage where the insured is legally entitled to obtain damages, by a judgment or other legal process, against the underinsured motorist. On its face, this language requires that the insured be able to demonstrate a valid tort claim for damages in some amount against the tortfeasor, but it does not speak to whether all alleged damages are recoverable from the tortfeasor. One would have to inject additional language into the statute to capture the idea advanced by State Farm.

¶ 20. Further, WIS. STAT. § 632.32(2)(e) defines an underinsured motor vehicle as a vehicle with policy limits that are "less than the amount needed to *fully compensate* the insured for his or her damages." Sec. 632.32(2)(e)3. (emphasis added). This language addresses the amount needed to compensate the insured, and does not address the tortfeasor's situation. Thus, this language is consistent with an insured's ability to invoke his or her underinsured motorist coverage up to the statutorily required policy limits where the amount actually recoverable against the tortfeasor is less than the damages claimed, as for example when a statutory cap is lower than the insured's damages.[4]

---

[4] State Farm argues that the Hunts improperly rely on WIS. STAT. § 632.32(2)(e) to "alter the definition of underinsured motorist coverage in" § 632.32(2)(d) and that this is "not a proper use of sub. (2)(e)3. because that subsection served an entirely different purpose." State Farm contends that the sole purpose of § 632.32(2)(e) is to establish that underinsured motorist coverage must be applied using the "separate fund" approach, and not the "limits-to-limits" approach. Assuming without deciding that this was one legislative purpose, we fail to see how this undermines the Hunts' interpretation based on § 632.32(2)(e). State Farm fails to come to terms with the rule that, as explained above, we interpret statutory language "in the context in which it is used" and as part of the whole statutory

¶ 21. In addition, a plain language interpretation is guided by the text and structure of the statute as a whole, from which we may ascertain the "scope, context, and purpose" of the statute in which this phrase is used. *Kalal*, 271 Wis. 2d 633, ¶¶ 46, 48. Here, Wis. Stat. § 632.32 governs motor vehicle insurance policies, and its requirements "appl[y] to every policy of insurance issued or delivered in [Wisconsin] against the insured's liability for loss or damage resulting from accident caused by any motor vehicle . . . ." Sec. 632.32(1). The 2009–10 version of the statute required every motor vehicle liability insurance policy to include underinsured motorist coverage. *See* § 632.32(4)(a)2m. In addition, this version of the statute included an anti-stacking provision and a provision prohibiting reducing clauses, both of which reflect the legislature's intent to ensure that insureds received underinsured motorist coverage for damages up to their policy limits. *See* § 632.32(6)(d) and (g).

¶ 22. The statutory language regarding uninsured motorist coverage also sheds light on the meaning of the phrase "legally entitled to recover." The legislature employed the same phrase in the definition of uninsured motorist coverage. *See* Wis. Stat. § 632.32(2)(f). The legislature went on to define an uninsured motor vehicle to include vehicles that are involved in "hit-and-run[s]" or that are otherwise "unidentified," or whose owners are "insolvent." Sec. 632.32(2)(g)1.-3. These provisions require uninsured motorist coverage where insureds cannot recover any alleged damages from negligent tortfeasors. It follows that the legislature used the phrase

scheme. *See State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110.

"legally entitled to recover" to mean recovery that exceeds what insureds can actually recover from tortfeasors.

¶ 23. Moreover, even if we were to conclude that the phrase "legally entitled to recover" is ambiguous, we would still resolve this ambiguity in favor of the Hunts based on the legislative history of Wis. Stat. § 632.32. *See Kalal*, 271 Wis. 2d 633, ¶¶ 48–50. In signing into law 2009 Wis. Act 28, which created the mandate of underinsured motorist coverage in § 632.32, the governor explained that the purpose behind the amendments to § 632.32 was "to ensure that policy holders obtained the full benefit of the coverage they have purchased . . . ." Governor's Veto Message of 2009 A.B. 75, 2009 Wis. Act 28 at 39 (June 29, 2009). This statement reflects the legislature's intent that insureds seeking underinsured motorist coverage should receive coverage up to their policy limits. *See Landwehr v. Landwehr*, 2006 WI 64, ¶ 25, 291 Wis. 2d 49, 715 N.W.2d 180 (a governor's veto message is part of a statute's legislative history). Additionally, in 2010, the legislature specifically rejected a provision excluding motor vehicles owned by governmental units from the definition of underinsured motor vehicles. Assembly Amendment 1 to 2009 A.B. 701 (March 5, 2010); *see also* Wisconsin Legislative Council Amendment Memo, 2009 A.B. 701 (March 15, 2010). In so doing, the legislature demonstrated its intent to retain underinsured motorist coverage up to the policy limits in instances where the underinsured motor vehicle is a government vehicle and the damages recoverable against the driver are capped by statute.

¶ 24. Based on the above, we agree with the Hunts that the phrase "legally entitled to recover" does not thwart underinsured motorist coverage for an insured

who has not been fully compensated for his or her damages where the amount of damages an insured could actually recover from a tortfeasor is capped by statute.

¶ 25. State Farm makes three arguments for its contrary interpretation of the phrase "legally entitled to recover." First, State Farm argues that our interpretation conflicts with our supreme court's interpretation of a similar phrase in *Gillette*. *See Gillette*, 251 Wis. 2d 561. Second, State Farm argues that our interpretation of the statute is unreasonable because it would "improperly shift responsibility from the tortfeasor to the underinsured motorist insurer." Third, State Farm argues that our interpretation would produce absurd results when applied to other areas of tort law. We reject each of these arguments for the following reasons.

¶ 26. We turn first to State Farm's argument that the court's decision in *Gillette* controls here. State Farm argues that, under *Gillette*, the phrase "legally entitled to recover" is limited to those damages actually recoverable from the tortfeasor. In *Gillette*, two Wisconsin residents sought underinsured motorist coverage under a Wisconsin automobile liability policy issued by State Farm for noneconomic damages for pain and suffering arising out of a vehicle collision. *Id.*, ¶¶ 11–14. The policy at issue contained language providing that State Farm would pay " 'damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle.' " *Id.*, ¶¶ 16–17 (quoting the insurance policy). The court interpreted the phrase "legally entitled to collect"[5] in this context to mean that

---

[5] The court in *State Farm Mutual Insurance Co. v. Gillette*, 2002 WI 31, 251 Wis. 2d 56, 641 N.W.2d 662, explained that "cases do not seem to differentiate between the phrases 'legally entitled to recover' and 'legally entitled to collect.' " *Id.*, ¶ 29 n.19.

an insurance company will compensate an insured for damages for bodily injury that the insured actually incurs *up to the amount of damages for which a driver of an underinsured motor vehicle is liable under the applicable law* up to the policy's liability limits.

*Id.*, ¶ 48 (emphasis added).

¶ 27. State Farm asserts that the court's conclusion in *Gillette* applies equally in the instant case and compels the conclusion that the phrase "legally entitled to recover" refers to the amount of damages that the insured can actually recover under applicable law against a negligent tortfeasor. We disagree.

¶ 28. In *Gillette*, the court explained:

The interpretation of the phrase "legally entitled to collect" arises in a variety of issues, including statutes of limitations; a tortfeasor's immunity from liability, such as governmental immunity; comparative negligence; and a statutory limitation on the amount of damages. We conclude that each issue as presented by a particular case must be analyzed separately to determine whether the insurance company should be treated the same as or different than an underinsured motorist. Different considerations may apply to each issue.

*Id.*, ¶ 40 (footnotes omitted).

¶ 29. In the language of *Gillette*, "[d]ifferent considerations" apply here than in *Gillette*. When *Gillette* was decided, the mandatory underinsured motorist coverage provision in Wis. Stat. § 632.32 was not yet in effect. The court's decision turned, in part, on its determination that, while underinsured motorist coverage is intended to both "put an insurance company in the shoes of an underinsured motorist and to compensate an insured fully for damages incurred up to the policy liability limits," "a policy need not necessarily provide coverage to fulfill both these purposes." *Id.*,

¶ 47. The court concluded that the policy at issue in *Gillette* could not "reasonably be read to provide coverage for all damages incurred." *Id.*

¶ 30. Here, unlike in *Gillette*, we are asked to interpret the phrase "legally entitled to recover" in a statute that mandates underinsured motorist coverage and defines that coverage in terms of whether the tortfeasor's policy limits are less than the amount necessary to "fully compensate" the insured. *See* WIS. STAT. § 632.32(2)(d) and (e). In this context, the phrase "legally entitled to recover" is not limited to damages that are actually recoverable against the tortfeasor.

¶ 31. We turn next to State Farm's second argument, that our interpretation of the phrase "legally entitled to recover" would "improperly shift responsibility from the tortfeasor to the underinsured motorist insurer." State Farm's argument here is premised on WIS. STAT. § 632.32(4)(c), which provides that:

> Unless an insurer waives the right to subrogation, insurers making payment under any of the coverages under this subsection shall, to the extent of the payment, be subrogated to the rights of their insured.

State Farm argues that this provision conflicts with our interpretation of § 632.32(2)(d) because an insurer cannot pursue subrogation for sums in excess of $250,000 from the county or its employee.

¶ 32. This argument fails for at least the following two reasons. First, from our review of the record, it appears that State Farm did not make this argument before the circuit court. "Arguments raised for the first time on appeal are generally deemed forfeited," and we first reject this argument on this basis. *Northbrook*

397

*Wisconsin, LLC v. City of Niagra*, 2014 WI App 22, ¶ 20, 352 Wis. 2d 657, 843 N.W.2d 851.

¶ 33. Second, if we were to turn to the merits, there are many circumstances in which an insurer might be foreclosed from subrogation for payments made to an insured pursuant to underinsured motorist coverage. For example, in *Sahloff v. Western Casualty & Surety Co.*, 45 Wis. 2d 60, 171 N.W.2d 914 (1969), the court held that an insured could claim uninsured motorist coverage against his insurer even though the tort action against the uninsured driver was barred by the statute of limitations.[6] *Id.* at 70–71. State Farm fails to distinguish *Sahloff* by explaining how an insurer's inability to obtain relief through subrogation due to a statutory cap differs from the scenario in which an insurer cannot obtain such relief because the statute of limitations has run on the underlying tort claim.

¶ 34. We turn to State Farm's third argument, that our interpretation of "legally entitled to recover" would produce absurd results when applied to other areas of tort law. State Farm asserts that our interpretation

> would enable an insured, whose contributory negligence was equal to the causal negligence of the tortfeasor, to recover one-half of the insured's total damages from the tortfeasor (or the tortfeasor's liability insurer) and, in addition, to recover the other half (the portion the insured never had a legal right to recover) as underinsured motorist benefits.

State Farm also asserts that our interpretation would allow an insured to recover in excess of the $350,000 statutory cap for loss of society and companionship

---

[6] Case law applicable to uninsured motorist coverage is also generally applicable to underinsured motorist coverage. *Gillette*, 251 Wis. 2d 561, ¶ 29 n.19.

damages through his or her underinsured motorist coverage, and to recover from an insurer for workers compensation despite exclusivity mandates. According to State Farm, "[t]here is no proper basis on which to distinguish the municipal limit from these other limits on tort liability."

¶ 35. The problem with State Farm's argument is that it ignores the language from *Gillette*, discussed above, that "the phrase 'legally entitled to collect' arises in a variety of issues," and that "each issue as presented by a particular case must be analyzed separately to determine whether the insurance company should be treated the same as or different than an underinsured motorist." *See Gillette*, 251 Wis. 2d 561, ¶ 40. The *Gillette* court further opined that

> an insurance company does not, for all purposes, stand in the shoes of the tortfeasor in a lawsuit between an insurance company and the insured. The insurance company cannot take advantage of all the defenses available to an underinsured motorist.

*Id.*, ¶ 36.

¶ 36. Thus, whether the phrase "legally entitled to recover" will require that an insurer retain all the defenses available to a tortfeasor will depend on the particulars. In the case of governmental liability caps, the purpose of such caps supports our application of the phrase "legally entitled to recover." The purpose behind governmental immunity statutes is plainly to protect the public purse, and not to reduce payouts by insurers to those injured through the negligence of government employees. *See Pries v. McMillon*, 2010 WI 63, ¶ 20, 326 Wis. 2d 37, 784 N.W.2d 648. The purpose of the cap bears no relation to an insured's underinsured motorist

coverage. We conclude that in this particular context State Farm does not stand in the shoes of the negligent tortfeasor.

¶ 37. Thus, in the context of a case involving the statutory municipal liability cap, we conclude that an insured is "legally entitled to recover" damages where he or she can demonstrate a claim for damages against a tortfeasor for which the insured is not fully compensated, despite the fact that all of these damages are not recoverable due to the statutory cap.[7]

## II. Exclusion for Government Vehicles

¶ 38. State Farm argues that a separate, independent basis for affirming the circuit court's grant of summary judgment is that the Hunts' policy explicitly excluded government vehicles from the definition of an underinsured motor vehicle. The Hunts disagree for

---

[7] We observe that courts from a number of other jurisdictions have addressed similar underinsured motorist coverage statutes and insurance policies providing underinsured motorist coverage and have determined that an insured is "legally entitled to recover" damages up to his or her policy limits through his or her underinsured motorist coverage where the damages recoverable from a tortfeasor are capped by statute. *See, e.g., Cincinnati Ins. Co. v. Trosky*, 918 N.E.2d 1, 9 (Ind. Ct. App. 2009) ("[T]he sovereign immunity defense is not available to UIM carriers who argue that once the statutory cap has been paid by the governmental unit, the insured is no longer 'legally entitled to recover.' "); *Speer v. Farm Bureau Mut. Ins. Co.*, 226 P.3d 558 (Kan. Ct. App. 2010); *West Am. Ins. Co. v. Popa*, 723 A.2d 1 (Md. 1998); *Boradiansky v. State Farm Mut. Auto. Ins. Co.*, 156 P.3d 25 (N.M. 2007); *but see Kendall v. United Servs. Auto. Ass'n*, 23 So.3d 1119 (Ala. 2009); *Matarese v. New Hampshire Mun. Ass'n Prop. Liab. Ins. Trust, Inc.*, 791 A.2d 175 (N.H. 2002).

two reasons. First, they argue that an endorsement to their policy does not include the exclusion for government vehicles. Second, even if the endorsement does include this exclusion, this exclusion is void because it restricts the coverage required pursuant to WIS. STAT. § 632.32(4)(a)2m. Because we agree with the Hunts that State Farm cannot exclude government vehicles in a manner that restricts underinsured motorist coverage as mandated by § 632.32, we address only the second argument.

¶ 39. State Farm argues that pursuant to WIS. STAT. § 632.32(5)(e), an exclusion to the definition of an underinsured motor vehicle for any government owned vehicle is not prohibited. This subsection states:

> A policy may provide for exclusions not prohibited by sub. (6) or other applicable law. Such exclusions are effective even if incidentally to their main purpose they exclude persons, uses or coverages that could not be directly excluded under sub. (6)(b).

State Farm argues that because the exclusion for government vehicles is not prohibited by § 632.32(6) and does not violate applicable law, it is valid.

¶ 40. We agree with State Farm that the exclusion for government vehicles is not explicitly prohibited by WIS. STAT. § 632.32(6). However, we disagree that it does not violate other applicable law.

¶ 41. This court previously rejected an argument similar to State Farm's in *Trampf*, addressing the validity of an uninsured motorist policy limiting recovery to an insured who is "hit" or "struck" by an uninsured motor vehicle. *See Trampf*, 199 Wis. 2d at 384–85. The version of WIS. STAT. § 632.32 in place at the time the court decided *Trampf* mandated coverage for uninsured vehicles. *See* WIS. STAT. § 632.32(4) (1995–96). As here, the

401

insurer argued that, pursuant to § 632.32(5)(e),[8] an insurer could provide exclusions not prohibited by law, and nothing in § 632.32 prohibited limiting insurability to instances in which a person is "hit" or "struck." *See Trampf*, 199 Wis. 2d at 386–87. The *Trampf* court rejected this argument, explaining that "[a]n insurance policy may expand but not reduce the coverage required by [Wis. Stat. § 632.32(4)]." *Id.* at 386. "The words 'hit' and 'struck' act to reduce the amount of coverage mandated by § 632.32(4)" and, thus, the policy language was invalid. *Id.* at 386–87.

¶ 42. As in *Trampf*, the exclusion here in fact violates other applicable law, namely, Wis. Stat. § 632.32(4), which requires, in pertinent part, underinsured motorist coverage for "*every policy of insurance . . . with respect to any owned motor vehicle registered . . . in this state against loss resulting from liability imposed by law for bodily injury.*" *See* § 632.32(4)(a), (a)2m. (emphasis added). This subsection requires that underinsured motorist coverage applies in all cases, and excluding coverage for government vehicles violates that applicable law.

¶ 43. State Farm does not attempt to distinguish *Trampf*. Instead, State Farm cites to *Progressive Northern Insurance Co. v. Hall*, 2006 WI 13, 288 Wis. 2d 282, 709 N.W.2d 46, and *Mau v. North Dakota Insurance Reserve Fund*, 2001 WI 134, 248 Wis. 2d 1031, 637 N.W.2d 45, to support its assertion that the government vehicle exclusion "is valid under [Wis. Stat. § 632.32](5)(e) because it is not prohibited by any other statute." State Farm's reliance on these cases is mis-

___

[8] Although in *Trampf v. Prudential Property & Casualty Co.*, 199 Wis. 2d 380, 544 N.W.2d 596, the court interpreted an earlier version of Wis. Stat. § 632.32(5)(e), the language at issue was the same as the language at issue here.

placed. In *Hall*, the court determined that an insurer's "other insurance" clause was not an exclusion, and, thus, the insurer could not rely on § 632.32(5)(e) (2003–04) to "save" this clause. 288 Wis. 2d 282, ¶¶ 24–33. In *Mau*, the court concluded that an "occupancy requirement" violated both the prohibition against excluding from coverage a named insured pursuant to WIS. STAT. § 632.32(6)(b)2.a. (1995–96), and the requirements for a "drive other car" exclusion in § 632.32(5)(j) (1995–96). 248 Wis. 2d 1031, ¶¶ 34–38. State Farm fails to explain how either of these cases applies here or why they compel a different conclusion in light of *Trampf*.

## CONCLUSION

¶ 44. For the reasons explained above, we reverse the circuit court's grant of summary judgment in favor of State Farm.

*By the Court.*—Order reversed.