**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 1, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.   2021AP1736
                    2021AP1737
STATE OF WISCONSIN**

Cir. Ct. Nos.  2019TP217
2019TP218

**IN COURT OF APPEALS
DISTRICT I**

APPEAL NO. 2021AP1736

IN RE THE TERMINATION OF PARENTAL RIGHTS TO M.S.R., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

S.L.W.,

      RESPONDENT-APPELLANT.

APPEAL No. 2021AP1737

IN RE THE TERMINATION OF PARENTAL RIGHTS TO W.A.R.-JR.,
A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

   PETITIONER-RESPONDENT,

 V.

S.L.W.,

   RESPONDENT-APPELLANT.

---

   APPEALS from orders of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed.*

 ¶1 DONALD, P.J.[1] S.L.W. appeals the orders terminating her parental rights to her children, M.S.R. and W.A.R. Jr., and the order denying her postdisposition motion. S.L.W. contends that she was deprived of effective assistance of counsel during the fact finding hearing because trial counsel failed to bring to the jury's attention a complete list of the services that the Division of Milwaukee Child Protective Services (DMCPS) was required to provide.[2] As

---

[1] These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] We note that S.L.W. was represented by two attorneys at the fact finding hearing. For ease of reading, we refer to S.L.W.'s trial attorneys collectively as "trial counsel."

discussed below, we conclude that S.L.W. has failed to establish that she was prejudiced. Accordingly, we affirm.

## BACKGROUND

¶2      S.L.W. is deaf. S.L.W. communicates using a modified version of sign language.[3] She also has some ability to read lips, read in English, and use her voice.

¶3      M.S.R. and W.A.R. Jr. are S.L.W.'s biological children. The history leading to the termination of parental rights orders at issue in this case is lengthy. In October 2013, M.S.R., who was three years old at the time, and W.A.R. Jr., who was a newborn, were removed from S.L.W.'s care due to concerns related to domestic violence, in which S.L.W. was the primary aggressor; S.L.W.'s ability to meet the children's basic needs; and prior incidents of abuse or neglect to S.L.W.'s two other children.

¶4      A month after the children were removed from S.L.W.'s care, the trial court placed them back in the home with their biological father, D.R., under the conditions that S.L.W. not reside in the home or have unsupervised contact with the children. From November 2013 to August 2015, S.L.W. had minimal communication with DMCPS workers and was not engaged in any services.

---

[3] At the fact finding hearing, two interpreters were used to communicate with S.L.W. A hearing interpreter would interpret the proceedings into American Sign Language (ASL) and then a deaf interpreter would interpret ASL into a form of sign language that S.L.W. could understand.

¶5     In April 2015, M.S.R. and W.A.R. Jr. were removed from the care of D.R. and placed into foster care.  At that time, it was discovered that S.L.W. was residing in Rockford, Illinois, and was incarcerated due to a fight with her sister.

¶6     Starting in August 2015, DMCPS attempted to schedule visitations for S.L.W. in Milwaukee.  According to J.E., who was a case supervisor, S.L.W. did not attend all of the scheduled visitations and had issues maintaining consistent communication with DMCPS.  S.L.W. was also resistant to services.

¶7     In November 2017, a new case manager, K.K., was assigned. During the time K.K. was on the case, there were periods where S.L.W. was cooperative with DMCPS and periods where she was not.  For instance, in June 2018, S.L.W. became upset with M.S.R. and said to her that "I should have never had you in the first place, you spoiled brat."  As a result, K.K. decided to temporarily suspend visitation until S.L.W. met with her and her supervisor to discuss the visit and how to prevent something like this from happening again. S.L.W. never met with K.K. and visitation remained suspended for a few weeks. S.L.W. then requested to put her visits on hold until her mother passed away.  As a result, it was a couple of months before her visits resumed.

¶8     In April 2019, S.L.W. moved from Rockford to Milwaukee.  Once S.L.W. moved back to Milwaukee, she was able to make progress in her case including moving to partially supervised visitation with the children.  However, after six partially supervised visits, visits moved back to fully supervised after S.L.W. threatened to hit W.A.R. Jr. with a shoe during the supervised portion of visitation.

¶9     On October 29, 2019, the State filed petitions to terminate S.L.W.'s parental rights to M.S.R. and W.A.R. Jr.  The petitions alleged that the children

were in continuing need of protection or services (continuing CHIPS), pursuant to WIS. STAT. § 48.415(2), and failure to assume parental responsibility, pursuant to § 48.415(6).

¶10    Due to the COVID-19 pandemic, visitation moved to a virtual setting starting in March 2020. In May 2020, there were two virtual visitations that resulted in changes to the visitation. First, on May 9, 2020, S.L.W. became upset and started yelling at the children because they did not wish her happy Mother's Day or get her a present. As the visitation ended, she counted down the time to the end of the visit, which upset the children. As a result, K.K. made the decision to start supervising the visitation herself and reduce the visit time from four hours to two hours. After the decision to modify visitation, S.L.W. sent a series of videos to the children and foster parents in which she called the children liars. On May 16, 2020, visitation ended after twenty minutes because S.L.W. continued to indicate to W.A.R. Jr. that she did not like that he was lying about how the visits were going. After May 16, 2020, S.L.W. refused to visit with the children virtually.

¶11    In September 2020, the case was reassigned to case manager L.M. L.M. set up in person visitations for S.L.W. S.L.W. did not attend the scheduled visitation in October 2020 or November 2020.[4]

¶12    In December 2020, S.L.W. left Milwaukee and returned to Rockford to live in a shelter. Subsequently, three or four virtual visitations took place

---

[4] According to S.L.W., she missed the November 2020 visit because she was in the hospital.

between February and March 2021. An additional visitation was scheduled for April 2021, but S.L.W. did not attend.

¶13 In April 2021, the State filed a motion for summary judgment on the continuing CHIPS ground. The trial court partially granted the State's motion for summary judgment. Specifically, the trial court found that: (1) M.S.R. and W.A.R. Jr. were adjudged to be in need of protection and services and placed outside of the home for a cumulative period of six months or longer pursuant to one or more court orders; and (2) that S.L.W. failed to meet the conditions of return.[5] As a result, the only remaining question for the jury to decide for each child on the continuing CHIPS ground was whether DMCPS "made a reasonable effort to provide the services ordered by the [c]ourt[.]" *See* WIS JI—CHILDREN 324.

¶14 On May 25, 2021, a fact finding hearing commenced. The State and Guardian ad Litem (GAL) argued that DMCPS had made a reasonable effort to provide the court ordered services—therapy, domestic violence counseling, a psychological evaluation, parenting aid and supervision, and transportation once a month for visitation. Additionally, the State and GAL argued that S.L.W. had failed to assume parental responsibility. In response, S.L.W. argued that DMCPS had failed to make a reasonable effort in her case, including communicating with her effectively, and that she never gave up fighting for her children.

¶15 On June 3, 2021, the jury found that the State had proven both grounds—continuing CHIPS and the failure to assume parental responsibility.

---

[5] This decision is not challenged on appeal.

6

The following day, June 4, 2021, the trial court found that it was in M.S.R.'s and W.A.R. Jr.'s best interests to terminate S.L.W.'s parental rights.

¶16     S.L.W. filed a postdisposition motion alleging that she was deprived of effective assistance of counsel at the fact finding hearing.  S.L.W. contended that trial counsel should have brought to the jury's attention language in the CHIPS dispositional order, which stated that DMCPS "will utilize the following to help facilitate and improve communication with [S.L.W.]," including that DMCPS would assist S.L.W. in getting internet access to enable videophones, setup a two interpreter meeting at least once a month for substantive reviews and discussions relating to goal progress, and use a live interpreter for any substantive discussion.

¶17     In response, the State contended that the language at issue was simply "a list of ideas" to facilitate communication, and not services ordered by the court.  The State also asserted that, even if the list constituted services ordered by the court, DMCPS had made reasonable efforts to provide those services.  Likewise, the GAL argued that the language at issue was not court ordered services, and that trial counsel had raised S.L.W.'s communication issues with the jury.

¶18     On February 18, 2022, the trial court denied the motion without an evidentiary hearing.  The trial court found that S.L.W. had failed to establish that she was prejudiced in regards to either the continuing CHIPS ground or the failure to assume parental responsibility ground.  S.L.W. renews her argument on appeal.  Additional relevant facts are referenced below.

**DISCUSSION**

¶19    Parents have the right to effective assistance of counsel in actions to involuntarily terminate parental rights.  *See A.S. v. State*, 168 Wis. 2d 995, 1004, 485 N.W.2d 52 (1992).  Ineffective assistance of counsel claims in a termination of parental rights proceeding are analyzed using the two-part test in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  *See Oneida Cnty. DSS v. Nicole W.*, 2007 WI 30, ¶33, 299 Wis. 2d 637, 728 N.W.2d 652.

¶20    To obtain relief based on ineffective assistance of counsel, S.L.W. has the burden to prove both deficient performance and prejudice.  *See Strickland*, 466 U.S. at 687.  Performance is deficient if it falls below an objective standard of reasonableness.  *Id.* at 688.  To show prejudice, S.L.W. must show a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceedings would have been different.  *See id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding.  *Id.*  If a parent fails to satisfy one component of the analysis, a court need not address the other.  *See id.* at 697.

¶21    Whether counsel's performance was deficient and whether an error was prejudicial are questions of law that we review *de novo*.  *See State v. Domke*, 2011 WI 95, ¶33, 337 Wis. 2d 268, 805 N.W.2d 364.  Findings of fact made by the trial court will not be overturned unless they are clearly erroneous.  *Id.*  A postconviction motion may be denied without a hearing if it fails to raise sufficient facts, makes conclusory allegations, or if the record itself demonstrates that the appellant is not entitled to relief.  *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.

¶22    On appeal, S.L.W. renews her argument that trial counsel should have brought to the jury's attention the language in the CHIPS dispositional order that directed DMCPS "to help facilitate and improve communication" with S.L.W.

¶23    We agree with the State and GAL, that even if trial counsel performed deficiently, S.L.W. has failed to establish prejudice with respect to the continuing CHIPS ground. There is no reasonable probability that the outcome of S.L.W.'s trial would have been different. *See **Strickland***, 466 U.S. at 694. The record contains overwhelming evidence that DMCPS did make a reasonable effort to facilitate and improve communications with S.L.W.

¶24    During the fact finding hearing, there was testimony elicited that DMCPS paid every month for internet for S.L.W. so that she could have access to a video relay interpretation service; that DMCPS set up meetings and visitations, but that S.L.W. was not always cooperative in maintaining contact; that when S.L.W. resided out of state that DMCPS paid for her transportation to Milwaukee so that she could have visits with her children; and that DMCPS communicated with her directly regarding her case. In particular, J.E. testified that when she was the supervisor on the case, DMCPS used a phone relay system, exchanged text messages, and used live interpreters when in person. Likewise, K.K. testified that when she was on the case, she attended in person visitations with S.L.W., the children, and at least one interpreter.

¶25    Moreover, even if trial counsel was ineffective with respect to the continuing CHIPS ground, the jury found that S.L.W. had failed to assume parental responsibility—which is an independent ground for termination. To establish failure to assume parental responsibility, the State needed to prove that S.L.W. did not have a substantial parental relationship with her children. *See* WIS.

STAT. § 48.415(6)(a); WIS JI—CHILDREN 346. A substantial parental relationship means the "acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child." Sec. 48.415(6)(b).

¶26 Here, there were gaps of time where S.L.W. had no visitation with her children. The gaps included August 2014 to August 2015, June 2018 to fall 2018, and April 2021 to May 2021. In addition, testimony was elicited that S.L.W. was not actively involved in the children's daily supervision, education, or medical care. Thus, the jury would have found grounds to terminate S.L.W.'s parental rights regardless of whether the additional language from the CHIPS dispositional order was brought to the jury's attention.

¶27 Therefore, S.L.W. has not proven that she was prejudiced, and we affirm the trial court's denial of S.L.W.'s postdisposition motion without an evidentiary hearing.[6]

> *By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[6] We note that in her briefs to this court, S.L.W. also suggests, for the first time, that trial counsel was ineffective for failing to elicit information that DMCPS was court ordered to communicate with Rockford. S.L.W. did not raise this issue in the trial court on remand, and thereby forfeited it. *See State Farm Mutual Auto. Ins. Co. v. Hunt*, 2014 WI App 115, ¶32, 358 Wis. 2d 379, 856 N.W.2d 633. Moreover, even if this issue is not forfeited, S.L.W. has failed to establish that she was prejudiced. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The order at issue simply states that DMCPS has "some responsibilities to communicate with officials in Rockford, Illinois." At the fact finding hearing, K.K. testified that she submitted a referral to Illinois to transfer the case, which was denied. In addition, K.K. reached out to the Illinois mental health coordinator for the deaf and hard of hearing and a former case manager of S.L.W.'s that had relocated to Rockford. Accordingly, even if trial counsel performed deficiently, S.L.W. has failed to establish that the outcome of trial would have been different had trial counsel referenced this order. *Id.* at 694.