COURT OF APPEALS
DECISION
DATED AND FILED

July 26, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP215**

STATE OF WISCONSIN

Cir. Ct. No. 2022ME335

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF D.E.W.:

WINNEBAGO COUNTY,

PETITIONER-RESPONDENT,

V.

D.E.W.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Winnebago County: SCOTT C. WOLDT, Judge. *Affirmed.*

¶1     GUNDRUM, P.J.[1]  Darren[2] appeals from an order of the circuit court ordering the involuntary administration of medication and treatment under WIS. STAT. § 51.61.  He contends Winnebago County failed to present sufficient evidence to support the involuntary medication order.  For the following reasons, we disagree and affirm.

## *Background*

¶2     Winnebago County filed a petition to extend Darren's commitment and for the involuntary administration of medication.  As relevant to this appeal, a final hearing on the petition produced the following evidence.

¶3     Dr. Thomas Michlowski testified that he is a psychiatrist serving as the medical director at the Wisconsin Resource Center (WRC).  He had reviewed Darren's treatment records and personally examined Darren on a number of occasions between Darren's admission to WRC on August 24, 2022, and the date of the hearing, October 20, 2022, including the morning of the hearing itself.  From this, Michlowski opined that Darren suffers from schizoaffective disorder, which Michlowski indicated in Darren's case amounts to "a substantial disorder of … [p]redominantly, thought," and which "grossly impair[s] … [p]redominantly [his] behavior and capacity to recognize reality."

¶4     Michlowski opined that Darren is dangerous, explaining that his medical records "reflect on multiple incidences of dangerousness" but specifically

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]  Darren is a pseudonym.

noting that "going back a number of years," as Darren himself relayed to Michlowski, "he beat a man to death with a baseball bat" and "at that time he was off his medication and not in his right mind," in addition to other violent incidences "involving a number of fights, breaking someone's nose, hitting someone in the head, hitting his girlfriend, and other episodes." Michlowski testified that Darren's violent behavior is "absolutely" driven by his mental illness, his illness can be treated with medication, and as related to court proceedings, medication would "help him" with assisting counsel and preparing for court proceedings.

¶5 Michlowski expressed that Darren is not competent to refuse medication. When asked, "[w]ere the advantages, disadvantages, as well as alternatives to accepting medication *explained to* [Darren]? *And* can you please cite one of the advantages?" (emphasis added) Michlowski responded:

> [O]ne of the advantages would be [to] help him with his thought processes so that he could think in a more logical way and be able to carry a concept to its logical conclusion in a socially acceptable way and help him not to believe that people are persecuting him in various ways.
>
> And there are other advantages, and those would be … to help him control his mood and his affect, which is quite problematic.

¶6 When asked to "cite one of the disadvantages *covered with* [Darren], regarding medication," Michlowski responded, "Well … no medication is free of side effects. So there could be common side effects that [a]ffect the central nervous system such as dizziness, lightheadedness, the gastrointestinal system, upset stomach. And then more serious general metabolic effects such as developing diabetes, which I *discussed in detail* with [Darren]." (Emphasis added.) When asked, "what alternatives were *discussed*," Michlowski stated that

"[a]lternatives were individual therapy, group therapy, various programs that are conducted at WRC."

¶7    When asked if Darren is "capable of *expressing* an understanding of *those* advantages, disadvantages, and alternatives," (emphasis added) Michlowski stated, "No," and expounded that Darren's

> mental illness precludes his being able to process that information such—and for the purpose of weighing the benefits and disadvantages and *applying* such to his mental illness.  For example, he told me on admission that he would take medication and then after several days he refused.  And, when I asked him, he stated I don't need medication.  I just need it to help me sleep, that I really don't need medication at all.  And he reinforced that this morning.

(Emphasis added.)  Michlowski further testified that when he spoke with Darren, even as recently as the morning of the hearing,

> you can't conduct a rational conversation.  He focuses on, you have to give me more food.  I want a bag meal, otherwise I won't take a—the bag meal means supplemental food—otherwise I'm not going to take my medication….
>
> And I explained to him that a side effect of medication could be diabetes.  We have to watch very carefully.  And he doesn't need so many extra calories.

¶8    In its written order for involuntary medication and treatment, the circuit court determined that "[m]edication or treatment will have therapeutic value," Darren "needs medication or treatment," "[t]he advantages, disadvantages, and alternatives to medication have been explained" to Darren, and "[d]ue to mental illness" he "is not competent to refuse psychotropic medication or treatment because [he] is … substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his … condition in order to

make an informed choice as to whether to accept or refuse psychotropic medications." Darren appeals.

## *Discussion*

¶9      Darren contends the County failed to meet its burden of proving by clear and convincing evidence that he was incompetent to refuse medication under WIS. STAT. § 51.61(1)(g)4.a. and b. *See* WIS. STAT. § 51.20(13)(e). We do not disturb a circuit court's findings of fact unless they are clearly erroneous, and we accept all reasonable inferences from those facts. *Outagamie County v. Melanie L.*, 2013 WI 67, ¶38, 349 Wis. 2d 148, 833 N.W.2d 607. "In evaluating whether the County met its burden of proof, a court must apply facts to the statutory standard in … § 51.61(1)(g)4.[a. and ]b.… Applying facts to the standard [is a] question[] of law that this court reviews independently." *Melanie L.*, 349 Wis. 2d 148, ¶39.

¶10     "[U]nder WIS. STAT. § 51.61, a person has the right to refuse medication unless a court determines that the person is incompetent to make such a decision." *Id.*, ¶53. As relevant to this case, the County establishes a person's incompetency to refuse medication by showing that due to mental illness

> and after the advantages and disadvantages of and alternatives to accepting the particular medication … have been explained to the individual, one of the following is true:
>
> a. The individual is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives.
>
> b. The individual is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his … mental illness … in order to make an informed choice as to whether to accept or refuse medication or treatment.

*See* § 51.61(1)(g)3., 4.; WIS. STAT. § 51.20(13)(e).

¶11    Darren first contends the County failed to present sufficient evidence showing that Michlowski reasonably explained to him "the advantages and disadvantages of and alternatives to accepting the particular medication." *See* WIS. STAT. § 51.61(1)(g)4.  Michlowski's testimony was insufficient, he argues, because Michlowski did not testify as to the name of the particular medication he discussed with Darren and because he "did not clearly testify" that he explained the advantages, disadvantages and alternatives of the medication to Darren. Rather, Darren states that Michlowski "only listed the perceived advantages; his testimony does not reveal whether he in fact communicated those advantages to Darren, let alone whether his explanation was 'reasonable' under the facts of this case."

¶12    We disagree with Darren.  While Michlowski did not testify to the name of the specific medication he was referring to, it is clear from the totality of his testimony that he was referring to some "particular medication." *See* ***Winnebago County v. P.D.G.***, No. 2022AP606-FT, unpublished slip op. ¶28 (WI App Sept. 7, 2022) (determining that the evidence was not insufficient to satisfy the statutory requirement simply because a particular medication's name was not uttered on the stand when there is "[a] reasonable inference from [the examiner's] testimony … that there was *some* 'particular medication' that was used for treating [the committee] and that [the examiner] discussed the advantages and disadvantages of it with [the committee]").[3]   Additionally, Michlowski's answers related to the advantages, disadvantages and alternatives directly followed

---

[3]  Pursuant to WIS. STAT. RULE 809.23(3)(b), this opinion is cited for persuasive value.

specific questions about what Michlowski, respectively, "explained to," "covered with," and "discussed" with Darren. Furthermore, Michlowski detailed specific advantages (better thought processes and mood control), disadvantages ("dizziness, lightheadedness, the gastrointestinal system, upset stomach" and, as discussed "in detail," the risk of developing diabetes), and alternatives ("individual therapy, group therapy, various programs that are conducted at WRC") that he explained to, covered with, and discussed with Darren. We conclude that the context in which Michlowski provided his responses supports the circuit court's conclusion that "[t]he advantages, disadvantages, and alternatives to medication have been explained" to Darren.[4]

¶13 Darren also contends the County failed to show he was either "incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives" or "substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his … mental illness … in order to make an informed choice as to whether to accept or refuse medication or treatment." We conclude the County sufficiently showed both.

¶14 In *Winnebago County v. Christopher S.*, 2016 WI 1, 366 Wis. 2d 1, 878 N.W.2d 109, our supreme court approved of the circuit court's determination

---

[4] Related to explaining the disadvantages of the medication to him, Darren asserts that Michlowski's testimony on this is "incomplete and fails to track actual DHS [Department of Health Services] guidelines." Because he fails to develop an argument related to any significance of this and because this contention is raised for the first time on appeal, we do not address it. *See ABKA Ltd. P'ship v. Board of Rev.*, 231 Wis. 2d 328, 349 n.9, 603 N.W.2d 217 (1999) (we do not address undeveloped arguments); *State Farm Mut. Auto. Ins. Co. v. Hunt*, 2014 WI App 115, ¶32, 358 Wis. 2d 379, 856 N.W.2d 633 ("Arguments raised for the first time on appeal are generally deemed forfeited." (citation omitted)).

that the requirements of WIS. STAT. § 51.61(1)(g)4.b. had been satisfied in a circumstance similar to that before us. In that case, the testifying doctor, Dr. Keshena, opined in largely conclusory fashion that Christopher was not competent to refuse medication, providing almost no explanation as to why she determined this was so. Keshena's testimony went as follows:

> Q. Dr. Keshena, in the course of your treatment of [Christopher] have you had an opportunity to explain to him the advantages, disadvantages, and alternatives to the medication?
>
> A. Yes.
>
> Q. And after you've done that, in your opinion would he be substantially incapable or substantially capable of applying an understanding of the advantages, disadvantages, and alternatives to his own conditions in order to make an informed choice as to whether to accept or refuse psychotropic medication?
>
> A. He's not capable.
>
> Q. So you're saying he's substantially incapable?
>
> A. Yes.

***Christopher S.***, 366 Wis. 2d 1, ¶54 (alteration in original). On cross-examination, she testified that Christopher "was previously on lithium" and had informed her "he didn't have any side effects from that medication, but he thought it was a placebo." ***Id.***, ¶56 n.28.

¶15    Keshena provided a conclusory opinion, with no significant elaboration as to why she held that opinion. *See **id.***, ¶¶54, 56. Nonetheless, the court held that "[b]ecause these statements mirrored the statutory standard, they met the statutory standard" and determined the circuit court did not err in

concluding that the County had proven that Christopher was incompetent to refuse medication. *Id.*, ¶56.[5]

¶16 Similarly, in the case now before us, immediately after Michlowski testified to having explained to Darren the advantages, disadvantages, and alternatives to accepting the recommended medication, questioning continued:

---

[5] The *Christopher S.* court also referenced a report by another doctor, Dr. Musunuru, noting that the report "also tracked the statutory language" and "made six key findings:"

> (1) "the advantages and disadvantages and the alternatives to accepting particular medication [were] explained to the subject in detail[]"; (2) "the subject did not appear to understand the explanation"; (3) "the subject holds patently false beliefs about the treatment recommended medications, which prevent an understanding of the legitimate risks and benefits"; (4) "due to the subject's mental illness, the subject is substantially incapable of applying an understanding of the advantages, disadvantages, and alternatives to make an informed choice as to accept or refuse medications"; (5) "the subject has no insight into his illness due to his mental illness"; and (6) "the subject is not competent to refuse psychotropic medications."

*Winnebago County v. Christopher S.*, 2016 WI 1, ¶55, 366 Wis. 2d 1, 878 N.W.2d 109 (alterations in original).

In the factual background section of the *Christopher S.* decision, the court did write that "Musunuru also found that 'the subject holds patently false beliefs about the treatment recommended medications, which prevent an understanding of the legitimate risk and benefits. They are denial of illness and trust in his delusions.'" *Id.*, ¶15. If Musunuru provided factual details related to this, the court did not deem such important to include. We also note that if the report provided elaboration as to why Musunuru "f[ou]nd[]" as he did, the court also did not deem such elaboration important to include in its "Discussion" section but only determined it important to note that the report "tracked the statutory language" and then included the specific conclusory language used by Musunuru that tracked the statute language. *Id.*, ¶55.

In the end though, it appears the *Christopher S.* court determined Keshena's testimony, limited as it was, to be sufficient to meet the statutory standard because it "mirrored the statutory standard." *Id.*, ¶56. We observe this to be so because in the first paragraph of the "Discussion" section, the court held that the circuit court did not err when it determined the County had established Christopher was incompetent to refuse medication because "the medical *expert's* undisputed *testimony*"—referencing "testimony," not a "report," and using the singular of "expert's"—"sufficiently addressed and met the requirements outlined in WIS. STAT. § 51.61(1)(g)4.b." *Christopher S.*, 366 Wis. 2d 1, ¶24 (emphasis added).

[County:] In your medical opinion, is [Darren] capable of expressing an understanding of those advantages, disadvantages, and alternatives?

[Michlowski:] No….

[County:] Why isn't he?

[Michlowski:] Because his mental illness precludes his being able to process that information … for the purpose of weighing the benefits and disadvantages and applying such to his mental illness.

Michlowski then provided an example, noting that Darren "told me on admission that he would take medication and then after several days he refused. And, when I asked him, he stated I don't need medication. I just need it to help me sleep, that I really don't need medication at all. And he reinforced that this morning." Michlowski subsequently testified that "you can't conduct a rational conversation" with Darren.

¶17     We conclude the circuit court did not err in determining that Darren was not competent to refuse medication. The record sufficiently shows that because of his mental illness, "and after the advantages and disadvantages of and alternatives to accepting the particular medication … ha[d] been explained" to him, he was "incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives." *See* WIS. STAT. § 51.61(1)(g)4.a. We conclude this because Michlowski's testimony "mirrored the statutory standard" of § 51.61(1)(g)4.a., and thus, in accordance with ***Christopher S.***, it "met the statutory standard." *See* ***Christopher S.***, 366 Wis. 2d 1, ¶56. Additionally, Michlowski indicated he concluded this "[b]ecause [Darren's] mental illness precludes his being able to process that information," and Michlowski also subsequently testified that "you can't conduct a rational conversation" with Darren. While more detail by Michlowski might have been helpful to the County in persuading the court that he was credible and his findings

sound, according to *Christopher S.*, they are not necessary. As long as the court finds the witness credible and the statutory standard considered, the incompetency determination holds.

¶18    The County also showed that Darren is "substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his … mental illness … in order to make an informed choice as to whether to accept or refuse medication or treatment," *see* WIS. STAT. § 51.61(1)(g)4.b., as the circuit court indicated in its written order. The "substantially incapable" standard of § 51.61(1)(g)4.b. is a "less rigorous standard" than the "incapable" standard of § 51.61(1)(g)4.a. "[S]ubstantially incapable" means that "*to a considerable degree*, a person lacks the ability or capacity to apply an understanding of the advantages and disadvantages of medication to his or her own condition." *Melanie L.*, 349 Wis. 2d 148, ¶70. Our supreme court explained in *Melanie L.* that "applying an understanding" "requires a person to *make a connection between* an expressed understanding of the benefits and risks of medication and the person's own mental illness." *Id.*, ¶71.

¶19    Again, Michlowski testified that Darren's "mental illness precludes his being able to process [the medication advantages, disadvantages, and alternatives] … for the purpose of weighing the benefits and disadvantages and applying such to his mental illness." Michlowski provided a supportive example of how Darren indicated upon admission to WRC that he would take the provided medication yet just days later he refused to take the medication and indicated he "really d[id]n't need medication at all," despite having previously been "not in his right mind" and beaten a man to death with a baseball bat when he was off his medication. Michlowski testified that Darren's violent behavior is "absolutely"

driven by his mental illness, but the testimony indicates Darren's detachment from reality prevents him from understanding that.

¶20 Based upon Michlowski's testimony, the circuit court found that Darren's mental illness "impairs his behavior and capacity to recognize and apply the facts that he's getting, the information that he's getting, to his situation." Again, in its written order, the court indicated Darren "is … substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his … condition in order to make an informed choice as to whether to accept or refuse psychotropic medications." Even though Michlowski's testimony did not precisely track the statutory language in every respect, we nonetheless conclude that the evidence presented by the County also sufficiently supports the court's determination that Darren was not competent to refuse medications under WIS. STAT. § 51.61(1)(g)4.b.[6] Whether the additional evidence supporting Michlowski's opinions is thin or plentiful, the court here found Michlowski credible, so his testimony as to both subdivs. a. and b. carried the day.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[6] Darren also contends the circuit court erred in admitting testimony from Michlowski regarding Darren's purported statement to a nurse that he had lied about medication side effects. Even if the court did err in admitting this testimony, we conclude the error was harmless as there was sufficient other evidence that WIS. STAT. § 51.61(1)(g)4.a. and b. were met. Darren also insists "the circuit court clearly relied on [the hearsay] evidence, as when it asserted that Darren was 'using' the medication issue as a 'tool to get what he wants.'" While Michlowski did testify that Darren's medical records contained entries from nurses supporting this, Michlowski also indicated that Darren had directly told him the same thing—that he would try to bargain with his medication to get more food. Statements by Darren to Michlowski would be admissible as admissions and not precluded as hearsay.